Jeffrey **VARBONCOEUR**, an Iowa resident, Lydia **Varboncoeur**, an Iowa resident, Luis R. **Rios**, an Iowa resident, and Liovigilda R. **Rios**, an Iowa resident, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

**STATE FARM FIRE AND CASUALTY COMPANY, Defendant.**

No. 3:04–CV–70108.

United States District Court, S.D. Iowa, Davenport Division.

Jan. 14, 2005.

Joseph R. Gunderson, Gunderson, Sharp & Walke, LLP, Des Moines, IA, for Plaintiffs.

J. Michael Weston, James P. Craig, Moyer & Bergman, PLC, Cedar Rapids, IA, James P. Gaughan, Joseph A. Cancila, Jr., Schiff Hardin & Waite, Chicago, IL, for Defendant.

## ORDER ON PLAINTIFFS' MOTION TO REMAND

PRATT, District Judge.

Before the Court is Plaintiffs' Motion to Remand, filed October 25, 2004 (Clerk's No. 17). Plaintiffs Jeffrey and Lydia Varboncoeur ("the Varboncoeurs") and Plaintiffs Luis and Liovigilda Rios ("the Rioses") filed a Class Action Petition in the Iowa District Court in and for Scott County on August 27, 2004. In the Petition, Plaintiffs allege that Defendant, State Farm Fire and Casualty Company ("State Farm"), had a practice and policy of treating insured clients materially differently for purposes of loss evaluation, negotiation, and adjustment, if the insureds had a previous history of claims with State Farm. State Farm filed a Notice of Removal on September 23, 2004, claiming that jurisdiction is proper in the Southern District of Iowa pursuant to 28 U.S.C. § 1332(a). Specifically, State Farm claims that federal jurisdiction is proper as the parties are diverse citizens and the amount in controversy exceeds $75,000. On October 25, 2004, Plaintiffs filed a Motion to Remand the action to state court, and a brief in support thereof, arguing that State Farm failed to meet its burden to establish the requisite minimum amount in controversy. Defendant filed a resistance to the motion on November 12, 2004. Plaintiffs filed a reply brief on November 24, 2004, and State Farm filed a sur-reply on November 30, 2004. A hearing was held on December 15, 2004. The matter is fully submitted.

## I. THE COMPLAINT AND REMOVAL NOTICE

All named Plaintiffs are citizens of Iowa. The Varboncoeurs reside in Columbus Junction, Iowa, while the Rioses reside in Burlington, Iowa. State Farm is a Nebraska corporation with its principal place of business in Lincoln, Nebraska. State Farm does, however, conduct a substantial amount of business in Iowa. Each of the named Plaintiffs maintained homeowner's insurance underwritten by State Farm.

On approximately August 28, 2003, a hail storm swept through Columbus Junction, Iowa damaging the home of the Varboncoeurs. The Varboncoeurs made a claim for the hail damage with State Farm. On or about September 17, 2003, State Farm inspected the Varboncoeurs' home. At that time, both parties agreed that the hail storm had caused a "covered loss" to the home within the meaning of the insurance policy. On the same date as the inspection, State Farm issued an "Actual Cash Value" and "Replacement Cost Value" damages evaluation to the Varboncoeurs in the amount of $199.83. Thus, after applying the policy's $250.00 deductible, the initial loss payment proposal was $0.00. The Varboncoeurs objected to the evaluation and the loss payment proposal. On approximately October 15, 2003, State Farm issued a second written "Actual Cash Value" and "Replacement Cost Value" damages evaluation of $1,248.84, with a loss payment proposal of $998.84 after accounting for the deductible. On the same date, State Farm issued a check to the Varboncoeurs in the amount of $998.84. On November 10, 2003, State Farm sent the Varboncoeurs a letter detailing their claims history with State Farm over the previous seven years. This letter noted a loss payment of $3,340.15 on August 6, 2001 for Fire/Lightning damage, and a loss payment of $4,904.13 on May 18, 1997 for Wind/Hail damage. At some point, State Farm sent the Varboncoeurs additional loss payment checks for the August 28, 2003 hail damage which, together with the original check for $998.84, totaled over $1900.00. The Varboncoeurs have not cashed any of the loss payment checks from State Farm regarding the August 28, 2003 hail storm.

On approximately May 8, 2003, a hail storm swept through Burlington, Iowa, damaging the home of the Rioses. State Farm inspected the Rioses' home on June 3, 2003, and confirmed that the Rioses had suffered a "covered loss" pursuant to the terms of their homeowner's policy. On or about June 11, 2003, State Farm issued an "Actual Cash Value" and "Replacement Cost Value" damages evaluation of $356.67. After applying the Rioses' $500.00 deductible, the initial loss payment proposal for the "Net Actual Cash Value Payment" was $0.00. The Rioses objected to the proposal and received a second damages evaluation on September 25, 2003, reflecting a "Replacement Cost Value" of $2,649.89, an "Items Payable When Incurred" value of $1,109.36, an "Actual Cash Value" of $1,540.53, and a total "Net Actual Cash Value Payment," accounting for the deductible, of $1,040.53. State Farm issued a loss payment check to the Rioses in the amount of $1,040.53. Prior to the second damages evaluation, State Farm sent the Rioses a letter, dated September 8, 2003, detailing the Rioses' claims history with State Farm which included: $723.79 on May 20, 2002 for Water Damage/Freezing; $350.00 on June 29, 1998 for Wind/Hail damage; $1,167.10 on July 8, 1993 for Wind/Hail damage; $4,730.46 on July 3, 1993 for Theft from an Auto; and $982.00 on January 9, 1993 for Mysterious Disappearance. Mr. Rios cashed the State Farm check for $1,040.53, despite the fact that an independent roofer had provided an estimate of damages to the home in an amount of $3,660.00. Upon receiving the State Farm loss proposals, Mr. Rios polled neighbors who were State Farm homeowner's policy holders, and discovered that only persons with prior claims histories with State Farm received such a low first payment proposal.

The Rioses and the Varboncoeurs allege that the claims adjustors assigned to each of their claims were aware of the number, nature and valuation of prior claims made by each family on their respective policies. Plaintiffs also claim that State Farm headquarters in Lincoln, Nebraska, was aware of, examined or had the opportunity to examine, each loss payment proposal, the applicable deductible, the respective claims histories, and the documentation for each before a loss payment proposal was issued.

Plaintiffs have proposed two prospective "classes" for purposes of a class action lawsuit. Both classes would be comprised of those State Farm insureds who suffered a covered loss to their home on or after August 27, 1994, had prior State Farm claims histories, and who received a low first loss payment proposal followed by a final loss payment proposal at least 200% higher than the first loss payment proposal. The first class of individuals, however, would include those individuals who did not cash any State Farm Check (the "Uncashed Claims Check Class") reflecting the final loss payment proposal, while the second class would include those policyholders who did cash such checks (the "Cashed Claims Check Class"). Plaintiffs raise the following causes of action on behalf of themselves and any putative class members: 1) First party bad faith; 2) Fraud–Failure to Disclose; 3) Unjust Enrichment; 4) Breach of Express Contract; and 5) Fraudulent Concealment and Lack of Discovery. Plaintiffs' Petition requests damages including, but not limited to, "court costs and expenses, compensatory damages, attorney's fees, punitive damages, consequential damages," and interest, each as allowed by law.

State Farm's Removal Notice claims that federal diversity jurisdiction supports removal of this matter because the parties are completely diverse, and because the amount in controversy exceeds $75,000. Plaintiffs do not dispute that diversity of citizenship exists. Plaintiffs, however, do

claim that Defendant has failed to establish, to the requisite degree of legal proof, that the amount in controversy exceeds the jurisdictional amount. Thus, the sole matter before the Court is whether Plaintiffs' claimed damages are greater than the $75,000 jurisdictional requirement to maintain the case in federal court.

## II. LAW AND ANALYSIS

█ As a general matter, a civil case brought in state court may be removed by a defendant to federal court if it could have been brought there originally. *See* 28 U.S.C. § 1441(a); *Motion Control Corp. v. SICK, Inc.,* 354 F.3d 702, 705 (8th Cir. 2003). Federal courts are courts of limited jurisdiction and "the requirement that jurisdiction be established as a threshold matter springs from the nature and limits of the judicial power of the United States and is inflexible and without exception." *Godfrey v. Pulitzer Pub. Co.,* 161 F.3d 1137, 1141 (8th Cir.1998). "The district court has subject matter jurisdiction in a diversity case when a fact finder could legally conclude, from the pleadings and proof adduced to the court before trial, that the damages that the plaintiff suffered are greater than $75,000." *Kopp v. Kopp,* 280 F.3d 883 (8th Cir.2002). A defendant who seeks to remove a case to federal court bears the burden of proving that the requirements for diversity jurisdiction have been met. *See McNutt v. Gen. Motors Acceptance Corp. of Ind.,* 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); *Wilson v. Republic Iron & Steel Co.,* 257 U.S. 92, 97, 42 S.Ct. 35, 66 L.Ed. 144 (1921); *Yeldell v. Tutt,* 913 F.2d 533, 537 (8th Cir.1990); *Iowa Comprehensive Petroleum Underground Storage Tank Fund Bd. 990C80656 v. Amoco Oil Co.,* 883 F.Supp. 403, 407 (N.D.Iowa 1995); *Adams*

*v. Bank of Am., N.A.,* 317 F.Supp.2d 935, 940 (S.D.Iowa 2004) (citing *Bor–Son Bldg., Corp. v. Heller,* 572 F.2d 174, 182 n. 13 (8th Cir.1978)).

█ When a case is filed in state court, and subsequently removed, "[t]here is a strong presumption that the plaintiff has not claimed a large amount in order to confer jurisdiction on a federal court or that the parties have colluded to that end. For if such were the purpose suit would not have been instituted in the first instance in the state but in the federal court." *St. Paul Mercury Indem. Co. v. Red Cab Co.,* 303 U.S. 283, 290–91, 58 S.Ct. 586, 82 L.Ed. 845 (1938). Thus, where a plaintiff specifically claims less than the federal requirement in a state court action, removal should generally be precluded. *See id.* at 294, 58 S.Ct. 586 ("If [the plaintiff] does not desire to try his case in the federal court he may resort to the expedient of suing for less than the jurisdictional amount, and though he would be justly entitled to more, the defendant cannot remove."); *see also Terra Int'l, Inc. v. Mississippi Chem. Corp.,* 119 F.3d 688, 695 (8th Cir.1997) (stating that, "[i]n general, federal courts give considerable deference to a plaintiff's choice of forum ...."); 14A Federal Practice § 3725, at 418–19 ("[A] plaintiff who has a claim for more than the jurisdictional amount may waive proof of it and bring a nonremovable action in a state court for less than the statutory minimum and thereby prevent removal.").

The standards are made less clear in a case such as this one, where state court rules prohibit plaintiffs from asserting a specific amount in controversy.[1] "Thus, the allegations of the actual damages on the face of the complaint provide the court

---

1. Iowa Rule of Civil Procedure 1.403(1) provides: "[E]xcept in small claims and cases involving only liquidated damages, a pleading shall not state the specific amount of money damages sought but shall state whether the amount of damages meets applicable jurisdictional requirements for the amount in controversy."

with no basis for determining the amount of actual damages in question." *McCorkindale v. American Home Assur. Co./A.I.C.,* 909 F.Supp. 646, 655 (N.D.Iowa 1995).

■■ The normal procedure in determining whether an action is removable is to, first, "determine whether the complaint is removable on its face." *Wiemers v. Good Samaritan Soc'y,* 212 F.Supp.2d 1042, 1045 (N.D.Iowa 2002) (citing *McCorkindale* 909 F.Supp. at 653–55). Where, as here, the amount in controversy is sufficiently unclear as to permit disagreement over whether the complaint is removable on its face, the court must "provide the parties with the opportunity to satisfy the court as to the amount in controversy." *Wiemers,* 212 F.Supp.2d at 1045. While some courts require the proponent of federal jurisdiction to prove the amount in controversy to a legal certainty, the Eighth Circuit has adopted a lesser standard of proof by a preponderance of the evidence. *See James Neff Kramper Family Farm P'ship v. IBP, Inc.,* 393 F.3d 828, 2005 WL 30448 (8th Cir.2005) ("We do not assume the claimed amount is the actual amount in controversy if 'the court questions whether the amount alleged is legitimate', [for then] the party invoking federal jurisdiction must prove the requisite amount by a preponderance of the evidence.") (citing *Missouri ex rel. Pemiscot County v. Western Sur. Co.,* 51 F.3d 170, 173 (8th Cir.1995) (citing *McNutt,* 298 U.S. at 189, 56 S.Ct. 780)); *In re Minn. Mut. Life Ins. Co. Sales Practices Litig.,* 346 F.3d 830, 834 (8th Cir.2003); *Adams,* 317 F.Supp.2d at 942; *accord Allen v. R & H Oil & Gas Co.,* 63 F.3d 1326, 1335 (5th Cir.1995) ("legal certainty" rule only applies "[w]here the plaintiff has alleged a sum certain that exceeds the requisite amount in controversy"); *Gafford v. General Elec. Co.,* 997 F.2d 150, 160 (6th Cir. 1993) ("The 'legal certainty' test in removal cases arose in a context where the plain-

tiff's prayer for damages in state court exceeded the federal amount-in-controversy requirement ... [and] should not be applied to situations ... where damages are unspecified."); *compare Samuel–Bassett v. KIA Motors Am., Inc.,* 357 F.3d 392, 398 (3d Cir.2004); *Nagel v. Wal–Mart Stores, Inc.,* 319 F.Supp.2d 981, 983 (D.N.D.2004) (requiring proof that the jurisdictional amount is met by a standard of to a legal certainty); *City of Univ. City v. AT & T Wireless Serv., Inc.,* 229 F.Supp.2d 927 (E.D.Mo.2002) (same); *Atkins v. Harcros Chems., Inc.,* 761 F.Supp. 444, 446 (E.D.La.1991) (same); *Kennedy v. Commercial Carriers, Inc.,* 739 F.Supp. 406, 410 (N.D.Ill.1990) (same); *but see Scherer v. Equitable Life Assur. Soc'y of U.S.,* 347 F.3d 394, 397 ("A party invoking diversity jurisdiction of federal court has burden of proving that it appears to reasonable probability that claim is in excess of statutory jurisdictional amount.").

■ Regardless of the standard of proof applied, the Court must "resolve all doubts about federal jurisdiction in favor of remand" in all cases. *In re Bus. Men's Assur. Co. of Am.,* 992 F.2d 181, 183 (8th Cir.1993); *Samuel–Bassett,* 357 F.3d at 403; *Tongkook Am., Inc. v. Shipton Sportswear Co.,* 14 F.3d 781, 784 (2d Cir. 1994) ("If the right of recovery is uncertain, the doubt should be resolved ... in favor of the subjective good faith of the plaintiff.") (quoting *McDonald v. Patton,* 240 F.2d 424, 426 (4th Cir.1957)); *Matheson v. Progressive Specialty Ins. Co.,* 319 F.3d 1089, 1091 (9th Cir.2003) ("Where doubt regarding the right to removal exists, a case should be remanded to state court."). This is particularly true in light of the fact that a case may be remanded to state court at any stage of the proceedings should it be determined that diversity jurisdiction was lacking. *See generally Kessler v. Nat'l Enter. Co.,* 347 F.3d 1076 (8th

Cir.2003) (finding no jurisdiction after years of litigation and three separate appeals); *see also 4:20 4:20 Communications, Inc. v. Paradigm Co.*, 336 F.3d 775, 778 (8th Cir.2003) ("As parties may not expand the limited jurisdiction of the federal courts by waiver or consent, subject matter jurisdiction issues may first be raised at any time, even on appeal."); *Meritcare Inc. v. St. Paul Mercury Ins. Co.*, 166 F.3d 214, 218 (3d Cir.1999) ("Thus, if it develops that the requisite amount in controversy was never present, even if that fact is not established until the case is on appeal, the judgment of the District Court cannot stand.") (citing *American Fire & Cas. Co. v. Finn*, 341 U.S. 6, 17–19, 71 S.Ct. 534, 95 L.Ed. 702 (1951)).

In the present case, Plaintiff's Petition before the state court claims that State Farm undertook a practice of identifying insureds who were poor underwriting risks based on claims histories and essentially "re-underwrote" the risk with respect to later claims, negotiations, and adjustments, rather than treating the claim the same as any other. Plaintiffs claim that State Farm then further adjusted the underwriting risk by choosing to non-renew, cancel, or renew policies with higher premiums, larger deductibles, or other coverage changes, in violation of common law, statutes, and the terms of the insurance policies. In their Prayer, Plaintiffs request judgment "for the damage plaintiffs have suffered as a result of the State Farm's actions, including but not limited to, court costs and expenses, compensatory damages, attorney's fees, punitive damages, consequential damages and . . . such other and further relief as the Court deems just, together with interest as allowed by law . . . ." Pet. at 25. Paragraph 12 of the Petition specifically provides: "The total amount in controversy of each of the named plaintiffs' claims for compensatory damages . . . is less than Seventy–

Five Thousand Dollars ($75,000) per individual." Pet. at 5.

In its removal notice, State Farm argues that Plaintiffs' attempt to limit damages in Paragraph 12 of the Petition fails, because the paragraph only limits compensatory damages. In their Prayer, State Farm claims, the Plaintiffs go on to request consequential damages, punitive damages, and attorney's fees, with no attempt to limit or otherwise "cap" their recovery of such damages. Without an explicit cap on other measures of damages, all potential damages, including contractual loss, disgorgement of profits and premiums, loss of time, lost use, indirect physical loss, emotional distress, punitive and compensatory damages, and attorney's fees, according to State Farm, count toward the jurisdictional minimum needed to satisfy diversity jurisdiction, and easily place the amount in controversy over $75,000.

■ The amount in controversy in class action petitions is to be judged at the time of removal by considering the claims of the named Plaintiffs. *See Kessler*, 347 F.3d at 1080; *Hartford Ins. Group v. Lou–Con Inc.*, 293 F.3d 908, 910 (5th Cir.2002); *Sutter v. Aventis CropScience USA Holding, Inc.*, 145 F.Supp.2d 1050, 1053 (S.D.Iowa 2001); *Thompson v. Victoria Fire & Cas. Co.*, 32 F.Supp.2d 847, 848 (D.S.C.1999) ("The court should examine the complaint at the time of removal in order to determine the amount in controversy.") (citing *St. Paul Mercury*, 303 U.S. at 292, 58 S.Ct. 586) ("[T]he status of the case as disclosed by the plaintiff's complaint is controlling in the case of a removal."). Moreover, the Court must look to state law to determine the nature and extent of the rights to be enforced. *See Horton v. Liberty Mut. Ins. Co.*, 367 U.S. 348, 352–53, 81 S.Ct. 1570, 6 L.Ed.2d 890 (1961). To that end, the parties agree that Iowa law is controlling. Accordingly, the Court will examine each

measure of damages alleged to be recoverable in the removal notice to determine whether the jurisdictional amount in controversy has been met, such that this Court should retain jurisdiction.

### A. Compensatory Damages

▇▇▇ The first category of damages requested by Plaintiffs in their Prayer, and argued by Defendant to exceed the jurisdictional amount in controversy, is compensatory damages. Compensatory damages, also called actual damages, are "an amount awarded to a complainant for the purpose of compensating that person for a proven injury or loss." Black's Law Dictionary (8th ed.2004); see also Wilson v. IBP, Inc., 589 N.W.2d 729, 732 (Iowa 1999) (compensatory damages are "intended to make the injured party whole"). By the plain language of the Petition, it would appear that the compensatory damages potentially recoverable by the named Plaintiffs would encompass the contractual damages sustained, that is, the difference between the "actual loss payment" they were given by State Farm and what the "actual loss payment" would have been, but for the alleged misconduct. Because the Rioses obtained an estimate from a roofer of approximately $3,660.00 in damages, but received only $1,040.53 after accounting for their deductible, actual damages sustained by the Rioses could potentially measure approximately $2,619.47. As to the Varboncoeurs, a roofer estimated their roof damage to be over $4,000.00, however, State Farm sent loss payment checks totaling approximately $1,900.00. This would provide an actual damages measure of approximately $2100.00 for the Varboncoeurs.

As noted by State Farm, however, contractual damages are merely one type of compensatory damages recoverable by Plaintiffs. Certain compensatory damages over and above any contractual loss may potentially be recovered on Plaintiffs' claims of bad faith, fraud, and unjust enrichment. To this end, State Farm argues that the Court should account for disgorgement of profits and premiums and compensatory damages potentially recoverable for emotional distress.

▇▇▇ With regard to the claimed disgorgement, State Farm argues that, because the Plaintiffs have requested that all statutes of limitations be tolled, Plaintiffs are "presumably seeking such monies over the course of their long relationships with State Farm." [2] Clerk's No. 33 at 9. Clearly damages could potentially be had for disgorgement of profits and premiums. See State of Iowa, Dep't of Human Serv. ex rel. Palmer v. Unisys Corp., 637 N.W.2d 142, 153 (Iowa 2001) ("Restitution measures the remedy by the gain obtained by the defendant, and seeks disgorgement of that gain."); Moriconi v. AT & T Wireless PCS, LLC, 280 F.Supp.2d 867, 880 (E.D.Ark.2003) (disgorgement should be factored into the amount in controversy). State Farm, however, has offered nothing evidentiary to assist the Court in determining likely dollar amounts of such damages.

According to the Petition, the Varboncoeurs were policyholders with State Farm since approximately 1997, while the Rioses were policyholders since approximately 1983. Thus, Plaintiffs could potentially be entitled to reimbursement of any inflated premiums or any profits that State Farm may have made at the expense of Plaintiffs. Clearly any premium disgorgement would encompass only the difference between what premiums Plaintiffs actually

---

**2.** Notably, however, the proposed class definitions actually limit class members to those persons who "suffered a covered loss to their home on or after August 27, 1994." Pet. at 12.

paid and what they should have paid had the premiums not been tortiously inflated. Disgorged profits would necessarily comprise some corollary dollar figure thereof.

█ The Court notes, first, that nowhere in Plaintiffs' Petition do they specifically request disgorgement of profits or premiums. Even assuming, however, that the language in the Petition could support such an award, State Farm has offered no evidence indicating that it is more likely than not that such damages are recoverable *on the facts of this case,* nor has it attempted to provide any sort of dollar measure were the damages held to be recoverable. State Farm, as the removing party, "is required to establish more than mere probability that the jurisdictional amount in controversy requirement is satisfied." *Warth v. State Farm Fire & Cas. Co.,* 792 F.Supp. 101, 103 (M.D.Fla.1992) (citations omitted).

Regardless, were the Court inclined to place a dollar amount on such damages, such estimate would constitute nothing more than a wild guess, unsupported by even an iota of evidence. Such speculation is simply insufficient to meet Defendant's burden to show that disgorgement of profits and premiums would add substantially, or even nominally to the amount in controversy. *See Hill v. Ford Motor Co.,* 324 F.Supp.2d 1028, 1036 (E.D.Mo.2004) ("Speculation and belief that plaintiff's damages exceed $75,000 are insufficient to meet the defendant's burden" under either the legal certainty or the preponderance of the evidence standard).

█ A similar situation is presented by State Farm's claim that a jury could reasonably award emotional distress damages to the named Plaintiffs. As with State Farm's argument regarding disgorgement of profits and premiums, nothing in Plaintiff's Petition suggests that a claim for emotional distress is likely, or even if made, would succeed. To recover for emotional distress under any of the legal theories proffered in the Petition, Plaintiffs would still be required to prove the elements of either intentional or negligent infliction of emotional distress. To recover damages for intentional infliction of emotional distress, Plaintiffs must prove: (1) outrageous conduct by the defendant; (2) the defendant intentionally caused, or recklessly disregarded the probability of causing, emotional distress; (3) the plaintiff suffered severe or extreme emotional distress; and (4) the defendant's conduct was a proximate cause of the emotional distress. *Meyer v. Nottger,* 241 N.W.2d 911, 918 (Iowa 1976). Regarding damages for negligent infliction of emotional distress, such damages are normally denied absent a claim of physical injury. *See Oswald v. LeGrand,* 453 N.W.2d 634, 639 (Iowa 1990). An exception to the physical injury rule generally is recognized only where there is a special relationship between the parties such that a duty to exercise ordinary care to avoid the infliction of emotional harm arises, such as cases where the breach of a contract inherently triggers deeply emotional responses. *See Niblo v. Parr Mfg., Inc.,* 445 N.W.2d 351, 354 (Iowa 1989); *Mentzer v. Western Union Tel. Co.,* 93 Iowa 752, 768–71, 62 N.W. 1, 5–6 (1895) (telegram delivery regarding death of loved one); *Meyer v. Nottger,* 241 N.W.2d 911, 920 (Iowa 1976) (contract for funeral services).

█ The nature of a homeowner's insurance contract is not one that would trigger an inherently and profoundly emotional response upon its breach, and because neither the Rioses nor the Varboncoeurs allege any physical injury, damages for the negligent infliction of emotional distress would not be recoverable. Likewise, with regard to a claim for intentional infliction of emotional distress, Plaintiffs have claimed only that State Farm acted

willfully and wantonly, not that it intentionally caused or recklessly disregarded the probability of emotional distress. Nor have Plaintiffs claimed that they have suffered any, let alone severe, emotional distress that was actually or proximately caused by State Farm's conduct. Even with a claim by Plaintiffs that State Farm's conduct was outrageous, outrageous conduct for purposes of recovering emotional distress damages must be "so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Harsha v. State Sav. Bank,* 346 N.W.2d 791, 801 (Iowa 1984) (quoting Restatement (Second) of Torts § 46 cmt. d (1965)).

State Farm's citations in its resistance brief are simply inapposite to the present factual situation. First, State Farm cites *Nassen v. Nat'l States Ins.* Co., 494 N.W.2d 231, 237 (Iowa 1993), which upheld a $40,000 emotional distress damages award based on a finding of bad faith handling of an insurance claim by an insurer. *Nassen,* however, presented a case where an insurer sold a nursing home policy to an eighty-five year old woman. *Id.* 233–34. When the woman was subsequently placed in a nursing home, the insurer fraudulently claimed that she had lied on her policy application and attempted to refund the premium and rescind the insurance retroactive to its date of issuance. *Id.* at 234. State Farm next cites *Nasiri v. Allstate Indem. Co.,* 41 Fed. Appx. 76, 77–78 (9th Cir.2002), where an insurer accused of delaying payment on a claim successfully established removal jurisdiction by providing the court with an itemized list of damages and attorney's fees likely to be incurred in the case. *Id.* at 78. In *Nasiri,* however, unlike in the present case, the insurer "provided the district court with a detailed estimate of punitive and emotional distress damages based on damage awards in similar cases." *Id.* The range for emotional distress damages in similar cases cited by the insurer were between $32,000 and $245,000. *Id.* In this case, State Farm has not provided the Court with a likely estimate of emotional distress damages, nor has it proven that such damages are more likely than not based on the unique facts of this case. Indeed, none of the cases cited by State Farm provide factually similar situations that incline the Court to believe that Plaintiffs could receive a large emotional distress award. Coupled with the fact that the Petition contains no language showing that Plaintiffs intend to seek emotional distress damages, the Court is left again with the conclusion that attempting to factor emotional distress damages into the jurisdictional amount in controversy would amount to nothing more than rank speculation or conjecture.[3]

### B. *Consequential Damages*

The Court next turns to State Farm's claim that consequential damages, requested by Plaintiffs in their Prayer, will easily exceed the jurisdictional minimum. Recoverable damages, according to State Farm, may include loss of use, lost time, and indirect consequential physical loss. State Farm offers only one case it claims to be on point, *Bradley v. West Bend Mut.*

---

**3.** The Court notes that the final case cited by State Farm regarding the likelihood of an emotional distress damages award is *Oswald Carrol v. Allstate Ins. Co.,* 2001 WL 527688 (Conn.Super.Jan.26, 2001). The parenthetical offered by State Farm states "verdict awarding $500,000 for emotional distress damages for bad faith denial of claim on homeowner's policy where contractual damages totaled only $26,468." The Court cannot make a reasonable comparison of the *Oswald* case to the present one, because the cited document is nothing more than a summary of the court's holding, without any factual information regarding the case or the basis for the decision.

*Ins. Co.*, 2003 WL 22900373 (Iowa Ct.App. Dec.10, 2003). In that case, a contractor doing remodeling for the Bradleys, performed negligent roof repair work by removing the entire roof at once, rather than in sections. *Id.* at *1. The contractor made no effort to cover the open top of the home and when a rain storm hit the area, the Bradleys' home sustained substantial water damage. The contractor's insurer denied payment for Bradleys' claim, arguing that because the contractor had failed to assist in defending the suit, it had no obligation to pay any claims. *Id.* The court found the insurer was obligated to pay for the Bradleys' damages and instituted both actual and punitive damages against the insurer. *Id.*

The *Bradley* case, however, does not lend any credence to State Farm's claim that the jurisdictional amount in controversy has been satisfied. There is no support in the Petition, or anywhere on the record, for the notion that the Rioses or the Varboncoeurs suffered any lost time, loss of use, or indirect physical damage such as interior rain damage. While conceivably an insurer's failure to pay appropriate monies owed could result in consequential damages to an insured, the facts of this case do not support an inference that State Farm's alleged "lowball" payments had such an effect in this case. The mere fact that some cases have substantial consequential damages does not, however, suffice to meet Defendant's burden to show, by a preponderance of the evidence, that Plaintiffs could reasonably recover such damages based on the allegations in the Petition.

### C. *Attorney's Fees*

State Farm next seeks to add pro rata shares of attorney's fees to the calculation of the amount in controversy for purposes of meeting the jurisdictional threshold. State Farm concedes that attorney's fees may not be aggregated for jurisdictional

purposes, *see Kessler*, 347 F.3d at 1080, but argues that, "[g]iven the extensive discovery sought and broad allegations of fraud, breach of contract, and bad faith asserted by Plaintiffs, the value of the legal work Plaintiffs' attorneys intend to perform will be substantial." Clerk's No. 33 at 14. Thus, according to State Farm, "attorney fees, even when divided amongst Plaintiffs, are sufficient to place more than the jurisdictional amount in controversy." The Court disagrees.

Admittedly, representation of a class action is generally a large undertaking. Nonetheless, the claims alleged in the Petition are in no way novel. Further, under Iowa law, there is generally no allowance for "attorney fees as damages in the absence of a statutory or written contractual provision allowing such an award." *Williams v. Van Sickel*, 659 N.W.2d 572, 579 (Iowa 2003) (citing *Hockenberg Equipment Co. v. Hockenberg's Equip. & Supply Co.*, 510 N.W.2d 153, 158 (Iowa 1993)); Iowa Code § 625.22 (permitting attorney's fees to be recovered in situations where a written contract contains an agreement to pay attorneys fees); *see also Conrad Assoc. v. Hartford Acc. & Indem. Co.*, 994 F.Supp. 1196, 1198 (N.D.Cal.1998) ("The amount in controversy includes claims for general and special damages (excluding costs and interests), including attorneys fees, *if recoverable* by statute or contract, and punitive damages, if recoverable as a matter of law.") (emphasis added); *Penn v. Wal–Mart Stores, Inc.*, 116 F.Supp.2d 557, 569 (D.N.J.2000) ("Attorneys' fees and costs are generally excluded from the amount in controversy calculations unless they are available under a statute or contractual provision."). Only one rare exception to the rule barring common law attorney's fees exists under Iowa law, and that exception has become more difficult to meet over time: "[A] plaintiff seeking com-

mon law attorney fees must prove that the culpability of the defendant's conduct exceeds the 'willful and wanton disregard for the rights of another'; such conduct must rise to the level of oppression or connivance to harass or injure another." *Hockenberg*, 510 N.W.2d at 158–60.

The difficulty that the Court faces with regard to attorney's fees, as it has with regard to most items of damages in this case, is that State Farm has not provided the Court with any evidence or sufficiently similar case law to permit it to make a reasonable determination of the value of various items of damages. In its resistance brief, State Farm merely claims that the value of Plaintiffs' attorneys' work will be substantial. The burden is State Farm's to provide the Court with some evidence or information whereby it could reasonably value damages for determining whether the amount in controversy threshold has been met. To this end, State Farm argues that the "Uncashed Check" class will likely be quite small. Thus, if any attorney's fee were divided equally amongst the two classes, the Varboncoeurs and a few other "Uncashed Check" class members would likely meet the amount in controversy requirement on that basis alone. State Farm, however, offers no support for the notion that, were attorney's fees to be divided between the two classes, they would be divided equally. Indeed, the Court is doubtful that were twenty individuals identified as "Uncashed Check" members, whereas 3,000 persons were identified as "Cashed Check" class members, that an award of attorney's fees would be divided 50–50 between the two classes. Rather, the likelihood is that the attorney's fee award would be divided pro rata among each member of the overall class, sub-category classes notwithstanding.

That said, Plaintiffs allege in their petition that there are likely thousands of former and current policy holders who may be included in one or both of the subclasses. State Farm is in the unique position of being able to provide an estimate of the number of potential class members in Iowa, without admitting any liability, by merely tallying the number of Iowa homeowners policy holders who had a claim within the class time frame, and also had prior claims with the company. State Farm has not done this, however. Thus, even assuming an exorbitant and unlikely $5 million dollar attorney's fee award, a class of 2,000 persons would only receive only $2,500.00 each when divided pro rata.

■ State Farm's next approach is to argue that attorney's fees may be quantified as a percentage of any total recovery for each named Plaintiff. Thus, if the Varboncoeurs' total damages award is $100,000, a normal contingency fee award would be between 20%–33.3% of that award, or $20,000 to $33,333 in attorney's fees. State Farm offers absolutely no case law in support of a contingency type attorney fee award in a class action case and the Court can find no law indicating the efficacy or legality of such an approach. Moreover, as discussed *supra*, the Court does not believe that State Farm has met its burden to show that the Varboncoeurs or the Rioses would more likely than not be entitled to such a large damages award. Thus, any contingency fee calculation would necessarily be substantially smaller than that asserted by State Farm. In the end, the Court is faced with the rarity with which common law attorney's fees are upheld pursuant to Iowa law, and the fact that the burden rests with State Farm to show that, more likely than not, the jurisdictional threshold has been satisfied. State Farm has failed to meet its burden in this regard, both as to whether attorney's fees are recoverable at all, and as to the likelihood that a pro rata division of

those fees would substantially alter the amount-in controversy calculation.

### D. *Punitive Damages*

The final category of damages State Farm claims places the amount in controversy over $75,000 is punitive damages. Punitive damages are included in determining the amount in controversy for diversity jurisdiction purposes. *Pemiscot County*, 51 F.3d at 173. The mere fact, however, that the Plaintiffs have asserted a claim for punitive damages, does not relieve State Farm, as the removing party, from proving that, more likely than not, punitive damages will cause the amount in controversy to exceed $75,000. When an amount in controversy depends on a claim for punitive damages, the Court must "scrutinize a claim for punitive damages more closely than a claim for actual damages to ensure Congress's limits on diversity jurisdiction are properly observed." *Id.* at 173 (citing *Larkin v. Brown*, 41 F.3d 387, 389 (8th Cir.1994)). Accordingly, the mere fact that Plaintiffs have alleged punitive damages is insufficient to establish that the requisite amount in controversy has been satisfied. *Id.* It is clear that Iowa law does not permit punitive damages for breach of contract. *See Pogge v. Fullerton Lumber Co.*, 277 N.W.2d 916, 920 (Iowa 1979). However, punitive damages may be recoverable for breach of contract "when the breach also constitutes an intentional tort, or other illegal or wrongful act, if committed maliciously." *Id.* Thus, Plaintiffs' claims of unjust enrichment, fraud, and bad faith may properly form the basis of a punitive damages award:

> Punitive damages are recoverable in order to "punish the party against whom they are awarded and to deter others from similar wrongdoing." *Grefe v. Ross*, 231 N.W.2d 863, 868 (Iowa 1975). Punitive damages may be awarded where a defendant is found guilty of fraud. *See C. Mac Chambers Co. v. Iowa Tae Kwon Do Academy, Inc.*, 412 N.W.2d 593, 599 (Iowa 1987). Such damages are appropriate: where defendant acts maliciously, but malice may be inferred where defendant's act is illegal or improper, where the nature of the illegal act is such as to negative any inference of feeling toward the person injured, and is in fact consistent with a complete indifference on the part of defendant.

> [L]iability for exemplary damages is not based upon the maliciousness of the defendant but is based, rather, upon the separate substantive principle that illegal or improper acts ought to be deterred by the exaction from the defendant of sums over and above the actual damage he has caused.

*Steckelberg v. Randolph*, 448 N.W.2d 458, 462–63 (Iowa 1989) (some citations omitted). Having determined that punitive damages may potentially and properly be awarded under Iowa law from the allegations in Plaintiffs' Petition, the Court now must determine whether the amount of punitive damages will more likely than not exceed the required amount in controversy. An important factor in resolving this question is whether any potential punitive damages may properly be aggregated to each putative class member.

"The punitive damages claims of the individual members of a class generally may not be aggregated for jurisdictional purposes." *Crawford v. F. Hoffman–LaRoche, Ltd.*, 267 F.3d 760, 765 (8th Cir.2001). An exception to the non-aggregation rule, however, exists where a class of plaintiffs seeks to enforce a single title or right to a common fund: "Under the classic 'common fund' cases, what controls is the nature of the right asserted, not whether successful vindication of the right will lead to a single pool of money that will

be allocated among the plaintiffs." *Id.* at 766 (quoting *Gilman v. BHC Sec., Inc.,* 104 F.3d 1418 (2nd Cir.1997)). In the present case, State Farm claims that Plaintiffs' punitive damages claim meets the exception to non-aggregation. This is so, State Farm proffers, because Plaintiffs are essentially seeking a recovery for the public of Iowa to remedy an alleged societal wrong, *i.e.,* the right to be free from alleged deceptive insurance practices and systematic fraud. Because Plaintiffs allege violation of Iowa Code § 507B.4, which defines impermissible insurance practices, State Farm claims that Plaintiffs' claims are necessarily seeking punitive damages for all Iowans by operation of the Iowa Civil Reparations Fund.

 Iowa Code § 668A.1 provides that in any trial involving a request for punitive damages, the jury shall be required to make findings indicating the following:

a. Whether, by a preponderance of clear, convincing, and satisfactory evidence, the conduct of the defendant from which the claim arose constituted willful and wanton disregard for the rights or safety of another.

b. Whether the conduct of the defendant was directed specifically at the claimant, or at the person from which the claimant's claim is derived.

If the jury answers (a) in the affirmative, then punitive damages shall be awarded fully to the claimant if the answer to (b) is also affirmative. If the answer to (b) is negative, an amount not to exceed 25% of the punitive damages award will be paid to the claimant with the remainder ordered paid into the Iowa Civil Reparations Fund. The rationale underlying Iowa's punitive damage legislation is "that 'a plaintiff is a fortuitous beneficiary of a punitive damage award simply because there is no one else to receive it.'" *Spaur v. Owens–Corning Fiberglass Corp.,* 510 N.W.2d 854, 869 (Iowa 1994) (citing *Shepherd Components,*

*Inc. v. Brice Petrides–Donohue & Assocs., Inc.,* 473 N.W.2d 612, 619 (Iowa 1991)). Section 668A.1 "was designed to divert a portion of a resulting punitive damage award to a public purpose." *Spaur,* 510 N.W.2d at 869 (citing *Fernandez v. Curley,* 463 N.W.2d 5, 8 (Iowa 1990)). It is this unique structure of Iowa punitive damages law that permits aggregation in this case, according to State Farm.

 Despite this unique aspect of Iowa law, the Court must bear in mind that the aggregation of punitive damages is barred "absent a prior determination that the underlying claim-the basis on which such damages are sought-asserts a single title or right." *Crawford,* 267 F.3d at 765. Even though Plaintiffs' Petition cites Iowa Code Section 507B.4, the damages sought by each putative class member are not merely for violation of that section. Indeed, the damages sought by each named Plaintiff, and correspondingly, by each putative class member, are for Iowa common law torts arising from underpayment of losses on individual homeowner's insurance policies.

Each putative class member purchased a homeowner's policy from State Farm, each developed a unique claims history, and each received an undervalued loss estimate. Moreover, the mere fact that violation of a statutory standard is recited as evidence of wrongful conduct does not somehow transform a common law tort claim into a societal claim to enforce a single right. Indeed, every case where justice is sought could arguably be called a societal claim. Thus, despite the fact that a public suit could be brought independently pursuant to Iowa Code Section 507B.4, the damages alleged by the named Plaintiffs in the present case do not assert a single title or right, and do not represent a completely common and undivided interest. Rather, each measure of damages is

sought to remedy a common law tort claim and the claims are, therefore, not subject to aggregation of punitive damages. *See Crawford*, 267 F.3d at 765–66 (class members' underlying claims were to vindicate individual rights involving separate purchases of vitamins sold by the defendants); *Moriconi*, 280 F.Supp.2d at 880 ("In this case, Plaintiff and prospective Class Member held no joint title to any portion of AT & T's profits prior to the commencement of this lawsuit. The Complaint seeks to vindicate individual rights based on separate purchases of wireless service.").

Having determined that aggregation of punitive damages is not appropriate, the Court must now evaluate whether any punitive damages award to any named Plaintiff would, by a preponderance of the evidence, satisfy the amount in controversy threshold when coupled with the other measures of damages discussed *supra.* As noted, the Court finds that punitive damages may be recoverable under Iowa law for Plaintiffs' claims of unjust enrichment, bad faith, and fraud. However, because Iowa law prohibits it, no specific measure of punitive damages is recited in the Petition. The Petition makes only conclusory allegations regarding State Farm's willfulness, as is the norm in notice pleading.

██ To support its claim that punitive damages, even if not aggregated, are sufficient to exceed $75,000, State Farm cites *Bradley*, 2003 WL 22900373; *Nassen*, 494 N.W.2d at 234; and *Bruce v. Marchesan Implementos*, 1991 U.S. Dist. Lexis 3455 (S.D.Iowa Jan. 4, 1991). Plaintiffs argue that each case cited by State Farm in support of its claim for high punitive damages actually has a very low ratio of actual to punitive damages. For example, *Bradley*, involving a botched roof repair, awarded a bad faith claim with $178,226 in actual damages and $100,000 in punitive damages, a ratio of 1.78:1. In *Nassen*, the case regarding nursing home insurance, the ac-

tual damages were $83,000, while the punitive damages award was $500,000, a ratio of just under 1:6. Finally, *Bruce* provided an actual damage award of $12,818.86 and punitive damages of $100,000, a ratio of approximately 1:7.8.

As discussed earlier, the laundry list of damages that State Farm alleges are recoverable are highly speculative and, as such, do not suffice to meet the minimum amount in controversy requirement. Hence, even applying the highest of the multipliers proffered by State Farm, 7.8, to the likely actual damages discernible, the Court still arrives at an amount totaling less than $25,000 in punitive damages for either the Varboncoeurs or the Rioses jointly. This figure, however, amounts to nothing more than a doubtful guess as to what the amount of punitive damages might be. The Court is convinced that no more educated a guess could be made given the highly conjectural nature of State Farm's removal argument and the conclusory allegations of the Petition. Accordingly, the Court cannot say that it is more likely than not that any named Plaintiffs' claims for actual and punitive damages, either separately or in combination, could reasonably meet or exceed the required amount in controversy to support federal diversity jurisdiction in this case.

### III. CONCLUSION

██ As a final aside, the Court notes that counsel for Plaintiffs has attempted, in both the reply brief and at oral argument, to clarify the extent of damages it claimed at the time of filing the Petition. Counsel stipulates, on behalf of Plaintiffs, that: "(a) no recovery is sought or will be sought for emotional distress, loss of use, lost time, any botched roof repair or any other indirect physical damages, and (b) in no event has any *individual* named plaintiff or individual putative class member

sought (or will at any time seek) any amount of damages (including underpayment for losses, disgorgement of profits or premiums, attorney fees or punitive damages) cumulatively in excess of $75,000." Clerk's No. 44 at 5. State Farm argues that Plaintiffs' post hoc stipulation is purely ineffective because Plaintiffs capped only compensatory damages in their Petition, and declined to cap any recovery on attorney's fees, punitive damages, or other compensatory or consequential damages.[4]

° While there remains much disagreement on the effect of such a stipulation, it appears possible that in a situation such as this one, where state law prohibits clear pleading of amounts in controversy, it may be used as persuasive, though not necessarily conclusive, evidence of the amount in controversy at the time of removal:

Generally, such a post-removal stipulation limiting the amount in controversy-like a post-removal amendment-would not defeat removal jurisdiction. However, this general rule has consistently been applied to cases in which the petition at the time of the removal expressly stated a claim in excess of the jurisdictional amount, and therefore, removal jurisdiction had already attached. Here, the court concludes that whether or not removal jurisdiction has attached is the very question before the court ....

Here, the proffered stipulation indicates that the value of the claim at the time of removal did not exceed the jurisdictional minimum, in a situation where pleading rules make the amount in controversy on the face of the complaint ambiguous at best. In these circumstances, the stipulation serves to clarify

rather than amend the pleadings. Consideration of such a "clarifying" stipulation is in accord with the fundamental principle of removal jurisdiction that whether subject matter jurisdiction exists is a question answered by looking to the complaint as it existed at the time the petition for removal was filed, as well as the further principles that the court's removal jurisdiction must be strictly construed, and that the court is required to resolve all doubts about federal jurisdiction in favor of remand. As such, it is not only permissible for the court to consider the stipulation, but for the court to find on the basis of the stipulation that removal never attached, because this court never had subject matter jurisdiction owing to lack of sufficient amount in controversy.

*Halsne v. Liberty Mut. Group,* 40 F.Supp.2d 1087, 1090–93 (N.D.Iowa 1999) (internal citations and parentheticals omitted). Notably, the Court believes that Plaintiffs' stipulation in this case is truthful and made in good faith. The Court also finds that it provides persuasive evidence of the damages *at the time of removal.* Remand, however, is necessary even without the stipulation, because State Farm simply has not shown by a preponderance of the evidence that a jury might legally award more than $75,000 in damages to any named Plaintiff on the facts of this case.[5]

Accordingly, because all doubts regarding federal diversity jurisdiction must be resolved in favor of remand, Plaintiff's Motion to Remand the matter to State Court is hereby GRANTED. This case is re-

---

4. At hearing, counsel for Plaintiffs stated that the failure to include damages other than purely compensatory damages in the language limiting claims to less than $75,000 was an innocent mistake on his behalf and that the language was intended to limit all measures of damages to less than $75,000.

5. Likewise, there is insufficient proof to show that the damages of the named Plaintiffs, even if joined as couples, *i.e.,* the Varboncoeurs jointly and the Rioses jointly, would meet the jurisdictional requirement.

manded to the Iowa District Court in and for Scott County. Furthermore, the remaining pending motions in the case, including Defendant's Motions to Dismiss or Stay (Clerk's Nos. 20 and 21), are hereby DENIED for lack of jurisdiction. Similarly, the parties' Joint Proposed Class Certification Question, Scheduling Order, and Discovery Plan (Clerk's No. 56) is DENIED as moot.

IT IS SO ORDERED