**CLARK–PETERSON COMPANY, INC.,
Jerald F. Clark and Jack A. Clark,
Appellants,**

v.

**INDEPENDENT INSURANCE ASSOCI-
ATES, LTD., Dick Wissink, Individually,
and The Cincinnati Insurance Company,
Appellees.**

No. 93–470.

Supreme Court of Iowa.

April 20, 1994.

John C. Conger of Wiggins & Anderson, P.C., West Des Moines, for appellants.

Gregory A. Witke of Bradshaw, Fowler, Proctor & Fairgrave, P.C., Des Moines, for appellees Independent Ins. Associates Ltd., and Dick Wissink.

Dawn R. Siebert and R. Todd Gaffney of Finley, Alt, Smith, Scharnberg, May & Craig, P.C., Des Moines, for appellee Cincinnati Ins. Co.

Considered by McGIVERIN, C.J., and HARRIS, LARSON, CARTER, and SNELL, JJ.

HARRIS, Justice.

The question here is whether all of plaintiffs' viable claims were subsumed in a prior recovery. Believing they were the trial court entered summary judgment in favor of defendant insurance company. We modify, affirm and remand.

The principal plaintiff, Clark–Peterson Co., purchased a multi-peril policy and a contractor's umbrella liability policy from defendant Cincinnati Insurance Co. (Cincinnati) through its agent defendant Dick Wissink and Independent Insurance Associates (for simplicity we hereinafter refer to Wissink and his agency in the singular as Wissink). The plaintiffs claim the policy was purchased on the basis of representations that it would cover employment discrimination claims.

Plaintiffs were later sued for wrongful discharge in a case based on alcoholism disability. Told there was no coverage under the policy, they obtained private counsel to defend the suit. Cincinnati eventually provided a defense, reserving the right to deny coverage if damages were awarded. The employment discrimination suit was thereafter settled for a substantial amount. Clark–Peterson and Cincinnati agreed to pay fifty percent with each side reserving its right to litigate coverage questions in a declaratory judgment action.

The plaintiffs then sued the defendants for declaratory judgment, claiming coverage. The suit also alleged breach of contract, negligence, breach of fiduciary duty, misrepresentation and intentional infliction of emotional distress based on Cincinnati's refusal to provide insurance coverage on the employment discrimination claim. The request for declaratory judgment was separated from the plaintiffs' other claims for trial.

Upon trial declaratory judgment was entered, declaring that Clark–Peterson had coverage for employment discrimination claims under the policy issued by Cincinnati. Cincinnati appealed and we affirmed, holding Clark–Peterson had coverage, but only under the reasonable expectations doctrine. *Clark–Peterson Co. v. Independent Ins. Assocs.*, 492 N.W.2d 675, 679 (Iowa 1992). Cincinnati promptly reimbursed Clark–Peterson for the fifty percent it previously paid in the discrimination suit.

 The district court subsequently granted summary judgment on all other claims and the matter is before us on plaintiffs' appeal from that order. We must determine whether there existed genuine issues of material fact and whether the district court correctly applied the law. *KMEG Television, Inc. v. Iowa State Bd. of Regents*, 440 N.W.2d 382, 384 (Iowa 1989). The claims against Cincinnati will be discussed in divisions I. through V. that follow. The claim against Wissink will be separately discussed in division VI.

 I. The district court's grant of summary judgment was on a finding that all issues remaining after our prior decision were premised on defendant's failure to provide coverage. If all the claims do constitute bad-faith claims, as the district court is accused of finding, the matter could properly be determined as a matter of law. In a bad-faith action, where "an objectively reasonable basis for denial of a claim exists, the insurer, as a matter of law, cannot be held liable for bad faith." *Reuter v. State Farm Mut. Ins. Co.*, 469 N.W.2d 250, 254 (Iowa 1991). That is, where coverage is "reasonably debatable" the insurer is free to debate it. This is true because the insurer has the right to have its rights adjudicated without being subject to tort claims. *See Hilde v. United States Fire Ins. Co.*, 184 Ga.App. 611, 362 S.E.2d 69, 71 (1987).

The plaintiffs primarily argue that the district court misconstrued their claims. Under their interpretation, the district court viewed the entire set of tort and contract claims as constituting a bad-faith denial of insurance coverage suit. The plaintiffs attack this construction and assert instead that they raise their claims with regard to Cincinnati's tor-

tious sale of the policy, not the later denial of coverage thereunder.

■ The plaintiffs' characterization of the district court's order is only half correct. The district court dealt with plaintiffs' bad-faith claims in one way and claims related to the initial sale in another. A successful plaintiff is entitled to one, but only one, full recovery, no matter how many theories support entitlement. *Team Cent., Inc. v. Teamco, Inc.*, 271 N.W.2d 914, 925 (Iowa 1978) (purpose of damages is to restore injured party to position enjoyed before injury; damages should not be duplicative); *DeWall v. Prentice*, 224 N.W.2d 428, 434 (Iowa 1974) (purpose of compensation is to restore injured party, not to permit receipt of more than was lost).

Remembering that the loss complained of in this litigation was withheld insurance coverage, we turn to plaintiffs' various theories to decide whether they relate to the same, or to different injuries.

■ II. In their breach of contract claim, plaintiffs assert that defendants orally agreed to provide discrimination coverage. Because we ultimately determined the policy failed to cover intentional acts of discrimination, the plaintiffs argue breach of this oral contract. As plaintiffs point out, this is not a bad-faith claim, but instead arises from alleged bad acts at the time of sale. But plaintiffs have already recovered. By reason of our prior decision plaintiffs have received the coverage and Cincinnati has provided it by paying the damages.

In the claim based on breach of fiduciary duty, plaintiffs assert that defendants failed to provide the agreed upon discrimination coverage in the policy actually sold, constituting a breach of their fiduciary duties. This is not a bad-faith claim either because it attacks conduct at the time of sale not at the time of denial. Once again, though, Cincinnati ultimately complied with any duty by providing the coverage.

The same must be said for plaintiffs' claim of negligent misrepresentation. This claim rests on essentially the same factual allegations as the contract claim and fiduciary claim. It is not a bad-faith claim. But,

because we ultimately required coverage, Cincinnati has already answered for any negligent misrepresentation unless consequential damages are also recoverable. We conclude they are not. Finally, plaintiffs' negligence claim is not a bad-faith claim either, but, because it relies on the same alleged "misrepresentations" asserted in the other claims, Cincinnati has already answered for it.

III. Although it is not entirely clear from the briefs, we understand the plaintiffs seek attorney fees on two separate claims. First they request attorney fees incurred in the underlying discrimination suit which Cincinnati initially refused to defend. Second, they request attorney fees in the declaratory judgment portion of this action.

■ The attorney fees incurred when plaintiffs' employee sued them for discrimination are recoverable. Under the express terms of the policy, with "respect to such insurance as is afforded by this policy ... [Cincinnati] shall have the right and duty to defend any suit against the insured seeking damages on account of personal injury...." We found coverage under the policy in the prior appeal and Cincinnati thus had a clear duty to provide a defense. We have said that

> an insurer who refuses, contrary to its contractual obligation, to defend a third-party action against its insured on the ground the policy involved affords no coverage is liable for attorney fees incurred by the insured in the defense of the action brought against him [or her].

*New Hampshire Ins. Co. v. Christy*, 200 N.W.2d 834, 845 (Iowa 1972). Up until the time Cincinnati began paying counsel, it must reimburse plaintiffs for attorney fees incurred in defense of the underlying suit.

Plaintiffs also request fees in this action. Because the attorney fee claim was likewise unclear in district court, that court dealt only with this question and not the request for fees in the discrimination suit.

■ We have held there shall be no "award for expenses incurred in an action to establish insurance coverage unless there is a showing made in the declaratory judgment

action that the insurance company has acted in 'bad faith or fraudulently or was stubbornly litigious.'" *Id.* Plaintiffs admit they do not assert bad faith, leaving only allegations of fraud or that defendants were stubbornly litigious.

Plaintiffs generally argue, however, that factual determinations must be made before attorney fees may be denied. To affirm the district court's summary judgment, we must find from the pleadings, and other documents, that defendants were neither stubbornly litigious nor acted in a fraudulent manner.

■ Defendants were not overly litigious, they merely believed no coverage existed under the policy, a contention with which we initially agreed. *See Clark–Peterson,* 492 N.W.2d at 676–77. Once a final determination was made, the defendants promptly paid the entire claim. Even prior to this, Cincinnati paid attorney fees in the underlying defense and paid half the judgment at the termination of trial, reserving the right to reclaim the fees and portion of the judgment paid. With this degree of cooperation, it cannot be said that defendants were overly litigious. All of these conclusions arise from uncontroverted facts.

Neither can it be said that defendants acted fraudulently in denying the claim initially. The coverage was reasonably debatable in view of our final determination.

■ IV. Plaintiffs also claim severe emotional distress arose from defendants' various alleged breaches. To recover under such a theory plaintiffs must show outrageous conduct that was "so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Bossuyt v. Osage Farmers Nat'l Bank,* 360 N.W.2d 769, 776 (Iowa 1985). On the basis of the pleadings and other filed documents, even giving them the widest latitude, it is clear that defendants' acts did not even approach this type of conduct.

■ Plaintiffs also seek to recover for ordinary emotional distress, damages that are ordinarily unavailable in a breach-of-contract suit. *Id.* at 777. One exception rises

where "the breach of such a kind that serious emotional disturbance was a particularly likely result." *Id.* Even if we assume a breach, the facts alleged here are not "particularly likely to cause emotional disturbance." Plaintiffs' claim for both severe and for ordinary emotional distress thus fails.

■ V. Finally plaintiffs seek punitive damages. *See* Iowa Code § 668A.1 (1993). This claim arises out of their primary claims of negligence and breach of fiduciary duty and contract. Any claim for punitive damages must likewise fail on these facts. Except in circumstances not shown here, punitive damages are not allowed in breach-of-contract claims in the absence of malice, fraud, or other illegal acts. *West v. Jayne,* 484 N.W.2d 186, 192 (Iowa 1992). The same is true with respect to a claim of fraudulent misrepresentation. *Shepherd Components, Inc. v. Brice, Petrides–Donohue & Assocs., Inc.,* 473 N.W.2d 612, 617 (Iowa 1991). A showing of wrongful conduct committed or continued with willful or reckless disregard for another's rights is sometimes sufficient to show legal malice. *Id.* But it is apparent that the claims here do not rise to such a level. Plaintiffs' claims for punitive damages thus fail.

VI. Each of plaintiffs' claims, previously discussed, were asserted against Cincinnati and Wissink. Claims against Wissink, to some extent, require separate discussion.

■ So far as they relate to unrealized insurance coverage, what we have said with regard to plaintiffs' claims against Cincinnati apply as well to the claims against Wissink. Performance has already been exacted and further recovery would be inappropriate.

To a limited extent, however, what we have said does not put to rest claimed losses for related damages. Some of what is asserted against Wissink relates to the time of negotiations for the policy. The claim for attorney fees against Wissink thus cannot be resolved by way of summary judgment, nor is it necessarily subject to the same resolution as the attorney fee claim asserted against Cincinnati. Wissink does not necessarily fall within the holding of *Christy,* 200 N.W.2d at 845

(limiting awards for expenses to cases where insurance company denied coverage in bad faith, fraudulently, or was "stubbornly litigious"). This is because Wissink may have brokered the policy as agent for plaintiffs rather than representing himself as Cincinnati's agent. *See Smith v. State Farm Mut. Ins. Co.*, 248 N.W.2d 903, 906 (Iowa 1976) (stating that if agent accepts an order to insure, agent must exercise that reasonable skill and ordinary diligence fairly expected from an insurance agent in obtaining a policy).

■ Plaintiffs are entitled to recover any fees expended in the declaratory judgment portion of this action that resulted from Wissink's negligence or breach in failing to obtain the promised coverage. *See Kimmel v. Iowa Realty Co.*, 339 N.W.2d 374, 380 (Iowa 1983) (person who, because of another's tort, has been required to protect his or her interests by bringing an action against a third person entitled to recover expenses incurred).

Plaintiffs' claim for punitive damages and emotional distress against Wissink specifically are denied for the same reasons explained in discussing the same claims against Cincinnati in divisions IV. and V.

The judgment of the trial court is affirmed in part, reversed in part, and the case remanded for trial on the claims for attorney fees as discussed in divisions III. and VI. Tax costs three-fourths to appellants and one-fourth to appellees.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**