Thomas W. WIEMERS, Plaintiff,

v.

GOOD SAMARITAN SOCIETY, a/k/a The Evangelical Lutheran Good Samaritan Society, d/b/a Manson Good Samaritan Center, Defendant.

No. C02–3023–MWB.

United States District Court,
N.D. Iowa,
Central Division.

June 5, 2002.

William G. Enke, Coleman & Enke, Fort Dodge, IA, for Plaintiff.

James M. Stanton, Stanton & Sorensen, Clear Lake, IA, Christopher E. Hoyme, Berens & Tate PC, Omaha, NE, for Defendant.

## MEMORANDUM OPINION AND ORDER REGARDING PLAINTIFF'S MOTION TO REMAND

BENNETT, Chief Judge.

### *I. INTRODUCTION AND BACKGROUND*

Plaintiff Thomas W. Wiemers filed this action on January 4, 2002, in Iowa District Court in and for Calhoun County, against defendant Good Samaritan Society ("Good Samaritan") and Amy Skramstad, asserting a claim that he was discharged by

defendant Good Samaritan Society ("Good Samaritan") in retaliation for pursuing a workers' compensation claim. Defendants Good Samaritan and Skramstad filed their answers to Wiemers's petition on January 12, 2002. On February 25, 2002, plaintiff Wiemers file a dismissal without prejudice of defendant Skramstad. On March 27, 2002, defendant Good Samaritan removed this action to this federal court pursuant to 28 U.S.C. § 1441(a). On May 7, 2002, plaintiff Wiemers filed an application for remand of this matter to state court, asserting an insufficient amount in controversy. In his motion for remand, Wiemers asserts that his suffered lost wages amounting to approximately $12,000. He contends that if he received $24,000 in punitive damages, the amount in controversy in this action, exclusive of an amount for mental suffering, is presently no more than $36,000. Thus, Wiemers seeks to have this matter remanded to state court for lack of federal subject matter jurisdiction, owing to insufficient amount in controversy. Defendant Good Samaritan filed a response to Wiemers's motion on May 24, 2002. In its response, Good Samaritan counters that this court has diversity jurisdiction under 28 U.S.C. § 1332(a)(1) because the amount in controversy exceeds $75,000 and the dispute is between citizens of different states. Good Samaritan also points out that Wiemers has omitted to mention that in a request for admissions propounded by Good Samaritan to him, Wiemers refused to admit or deny that the total amount of damages he is seeking in this case is less than $75,000. Good Samaritan also points out that because Wiemers is seeking damages for past and future medical expenses and his medical expenses to date total $45,411.34, it likely that the amount in controversy exceeds

$75,000. Plaintiff Wiemers filed a reply brief on June 3, 2003.

## II. LEGAL ANALYSIS

### A. Standards And Procedures Of Removal Jurisdiction

In *McCorkindale v. American Home Assur. Co./A.I.C.*, 909 F.Supp. 646 (N.D.Iowa 1995), this court summarized the principles applicable to a motion to remand as follows: (1) the party seeking removal and opposing remand bears the burden of establishing federal subject matter jurisdiction; (2) a fundamental principle of removal jurisdiction is that whether subject matter jurisdiction exists is a question answered by looking to the complaint as it existed at the time the petition for removal was filed; (3) lack of subject matter jurisdiction requires remand to the state court under the terms of 28 U.S.C. § 1447(c); (4) the court's removal jurisdiction must be strictly construed; therefore, (5) the district court is required to resolve all doubts about federal jurisdiction in favor of remand; and, finally, (6) in general, remand orders issued under 28 U.S.C. § 1447(c) are not reviewable by appeal or writ of mandamus. *McCorkindale*, 909 F.Supp. at 650.

Wiemers asserts that the very first principle mentioned above defeats removal here, because Good Samaritan cannot bear its burden to prove that removal is permissible. In *McCorkindale*, in addition to the general principles articulated above, this court considered the proper standards for determining the amount in controversy when a state court rule—such as Rule 70(a) of the Iowa Rules of Civil Procedure—prohibits the pleading of a specific amount in controversy: Instead of the "legal certainty" test,[1] the defendant is

---

1. The "legal certainty" rule states that, when an amount in excess of the jurisdictional amount was originally pleaded, "if, from the face of the pleadings, it is apparent, to a legal

certainty, that the plaintiff cannot recover the amount claimed, or if, from the proofs, the court is satisfied to a like certainty that the

required to prove by the preponderance of the evidence that the amount in controversy exceeds the jurisdictional amount. *McCorkindale*, 909 F.Supp. at 651–53. This court also outlined the process for determining the amount in controversy in such cases: First, the court must determine whether the complaint is removable on its face; and second, if the complaint is not removable on its face, the court must provide the parties with the opportunity to satisfy the court as to the amount in controversy.[2]  *Id.* at 653–55.

### B. Application Of Standards and Procedures

■ Turning to the first part of the applicable analysis, the court finds that the face of the complaint in question here provides little, if any, insight into the amount in controversy.  *Accord McCorkindale*, 909 F.Supp. at 655 (because Iowa law forbade pleading any amount in controversy, except an amount in excess of the jurisdictional amounts in state court, "the allegations of actual damages on the face of the complaint provide the court with no basis for determining the amount of actual damages in question"). This problem is not lessened by a prayer for punitive damages, because when sufficient amount in controversy depends upon such a prayer, the court " 'will scrutinize a claim for punitive damages more closely than a claim for actual damages to ensure Congress's limits on diversity jurisdiction are properly observed.' "  *Id.* at 655 (quoting *State of Mo. ex rel. Pemiscot County v. Western Sur. Co.*, 51 F.3d 170, 173 (8th Cir.1995)). Therefore, the court finds that the complaint is not removable on its face, and the court must take recourse to the second

prong of the analysis, providing the parties with the opportunity to satisfy the court as to the amount in controversy.  *Id.*

■ Here, Good Samaritan points out that Wiemers refused to admit or deny the following request for admissions propounded by Good Samaritan to him:

> ***REQUEST NO. 1:*** The Total amount of any and all types of damages you are seeking in this action is less than $75,000.

This Request can neither be admitted nor denied at this time since Mr. Wiemers had surgery on December 13, 2001 and has not yet been released. Therefore, a determination cannot be made at this time in regard to past and future medical expenses, past loss of income or future diminished earning capacity.

Defendant's Ex. 5.

Thus, by Wiemers equivocal answer, he tacitly concedes that he may be seeking damages in excess of $75,000 in this action. Moreover, Good Samaritan points out that a conservative calculation of Wiemers's lost wages to date would total $20,404.80. This represents Wiemers lost wages for the period of May 15, 2001, when Wiemers's employment was terminated, through May 15, 2002. Wiemers initially asserted that he had lost "approximately $12,000" in lost wages for the seven month period between May 15, 2001, and the time he underwent surgery seven months later. In his reply brief and supporting affidavit, however, Wiemers asserts that he has lost income of only $9,000 through April 2002 because he has been receiving workers compensation benefits since having surgery on December 13, 2001. Thus, the

---

plaintiff never was entitled to recover that amount, and that his claim was therefore colorable for the purpose of conferring jurisdiction, the suit will be dismissed." *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303

U.S. 283, 289, 58 S.Ct. 586, 82 L.Ed. 845 (1938).

**2.** The parties have already submitted supplemental materials with respect to the amount in controversy.

court finds that at the time this matter was removed, Wiemers was seeking only $9,000 in lost wages.

As plaintiff Wiemers's answer to the above quoted Good Samaritan's request for admissions indicates, Wiemers is also seeking past and future medical expenses. Good Samaritan points out that Wiemers has past medical expenses totaling $45,411.34. This amount signifies the costs for Wiemers surgery on December 13, 2001, and his post-surgical expenses. Wiemers, however, counters that he has no past medical expenses at this date. He notes that his reference to past and future medical expenses was to any medical expenses that might be incurred as a result of the emotional distress brought on by the wrongful discharge and not for the costs associated with his surgery. Therefore, considering only his lost wages and past medical expenses, Wiemers damage claim at the time of removal totals $9,000.00. This still leaves for consideration his claim for emotional distress, punitive damages, future diminished earning capacity, and future medical expenses. The parties, however, have not addressed the later two categories and ·the court has no way to determine from the face of the complaint what amount of damages are being sought by Wiemers for these two types of damages. Plaintiff Wiemers places his damages for emotional distress at $6,000. Therefore, plaintiff Wiemers's claims for lost wages, past medical expenses, and emotional distress, Wiemers's damage claims at the time of removal totals $15,000.00. This leaves Wiemers's claim for punitive damages.

■■■ As this court pointed out in *McCorkindale:*

> Punitive damages are included in determining the amount in controversy for diversity jurisdiction purposes. *State of Mo. ex rel. Pemiscot County v. Western Sur. Co.,* 51 F.3d 170, 173 (8th Cir.1995);

*Larkin,* 41 F.3d at 388; *Allison v. Security Benefit Life Ins. Co.,* 980 F.2d 1213, 1215 (8th Cir.1992); *see also Allen,* 63 F.3d at 1334–35 (the entire amount of punitive damages was countable as to each of 512 plaintiffs to determine amount in controversy for removal purposes). However, the mere fact that the plaintiff has asserted a claim for punitive damages does not relieve the defendant, as the removing party, of its burden to establish the propriety of removal jurisdiction nor necessarily establish that it is more likely than not the case that the amount in controversy will exceed $50,000. The Eighth Circuit Court of Appeals has held that when the amount in controversy depends upon a claim for punitive damages, the court "will scrutinize a claim for punitive damages more closely than a claim for actual damages to ensure Congress's limits on diversity jurisdiction are properly observed." *Pemiscot County,* 51 F.3d at 173; *Larkin,* 41 F.3d at 389. Thus, when a party challenges the amount in controversy, the district court errs by looking only at the allegation of punitive or exemplary damages as sufficing to establish the requisite amount in controversy. *Pemiscot County,* 51 F.3d at 173. Whether punitive damages are sufficient to provide the requisite amount in controversy depends, first, upon whether punitive damages are available as a matter of state law, *Larkin,* 41 F.3d at 389 (punitive damages were not available under Missouri law in assault case on facts alleged); *see also Hall v. Modern Woodmen of Am.,* 68 F.3d 1120, 1121 (8th Cir.1995) (where punitive damages were not available under Arkansas law for breach of contract claim, and amount of actual damages was only ˙$25,000, case did not involve sufficient amount in controversy), and, second, whether the amount of punitive damages will more

7

likely than not exceed the required amount in controversy. *Allen,* 63 F.3d at 1335 (standard upon challenge to removal jurisdiction when no amount in controversy is specified in complaint is whether it is more likely than not that amount of claim exceeds jurisdictional requirements); *Cadek v. Great Lakes Dragaway, Inc.,* 58 F.3d 1209, 1212 (7th Cir.1995) (same two-step analysis, but in circumstances where amount of punitive damages is specifically stated in complaint, second step is to require proof beyond a legal certainty that plaintiff will in no circumstances be entitled to recover the jurisdictional amount).

*McCorkindale,* 909 F.Supp. at 655–56; *accord Crawford v. Hoffman–La Roche Ltd.,* 267 F.3d 760, 765 (8th Cir.2001) ("Punitive damages, of course, may be used to establish diversity jurisdiction."); *see Bell v. Preferred Life Assur., Soc.,* 320 U.S. 238, 240–41, 64 S.Ct. 5, 88 L.Ed. 15 (1943) (including actual and punitive damages in the amount in controversy).

■■■■ Here, the court finds that punitive damages may be available under Iowa law for a claim of retaliatory discharge. *See Tullis v. Merrill,* 584 N.W.2d 236, 241 (Iowa 1998) (affirming punitive damage award of $40,000 for discharging an employee in retaliation for employee's demanding back wages); *Clarey v. K–Products, Inc.,* 514 N.W.2d 900, 903 (Iowa 1994) (affirming actual damages award where former employee brought action for wrongful termination where employer discharged her in retaliation for having filed workers' compensation claims but finding that because the plaintiff was discharged before the Iowa Supreme Court first rec-

ognized a claim for retaliatory discharge in *Springer v. Weeks & Leo Co.,* 429 N.W.2d 558 (Iowa 1988), employer could not be found guilty of a course of conduct so egregious as to give rise to punitive damages.); *Lara v. Thomas,* 512 N.W.2d 777, 782 (Iowa 1994) (recognizing that retaliatory discharge of employee who files claim for partial unemployment benefits gives rise to a claim for retaliatory discharge on such ground but affirming district court's order setting aside the punitive damage award of $15,000 on the ground that "punitive damages should not be awarded when a new cause of action for retaliatory discharge is recognized."). The court may therefore consider Wiemers's punitive damages claims in ascertaining whether the amount in controversy exceeded $75,000. Because the petition does not allege a specific amount of punitive damages being sought, the test the court must apply is whether it is more likely than not that the amount of the claim will exceed the jurisdictional amount of $75,000. *Allen v. R & H Oil & Gas Co.,* 63 F.3d 1326, 1335 (5th Cir.1995); *accord Hayfield v. Home Depot U.S.A., Inc.,* 168 F.Supp.2d 436, 458 (E.D.Pa.2001); *Arnold v. Guideone Specialty Mut. Ins. Co.,* 142 F.Supp.2d 1319, 1320 (N.D.Ala.2001); *Conrad Assoc. v. Hartford Accident & Indem. Co.,* 994 F.Supp. 1196, 1201 (N.D.Cal.1998); *Acosta v. Amoco Oil Co.,* 978 F.Supp. 703, 707 (S.D.Tex.1997); *Crosby v. America Online, Inc.,* 967 F.Supp. 257, 260 (N.D.Ohio 1997); *Duhon v. Conoco, Inc.,* 937 F.Supp. 1216, 1221 (W.D.La.1996); *Gilmer v. Walt Disney Co.,* 915 F.Supp. 1001, 1012 (W.D.Ark.1996).[3]

---

**3.** In contrast, where the complaint specifies an amount of punitive damages being sought greater than the jurisdictional amount, the court "has subject matter jurisdiction unless it is clear beyond a legal certainty that the plaintiff would under no circumstances be entitled to recover the jurisdictional amount." *Anthony v. Security Pacific Financial Services, Inc.,* 75 F.3d 311, 315 (7th Cir.1996) (citing *Cadek v. Great Lakes Dragaway, Inc.,* 58 F.3d 1209, 1211 (7th Cir.1995)).

After closely scrutinizing Wiemers's claim for punitive damages, the court concludes that Wiemers more likely than not could recover punitive damages from the allegations in his complaint. Wiemers alleges facts suggesting that Good Samaritan acted in willful and wanton disregard of Wiemers's rights. Wiemers alleges that he injured his hand at work. Petition at ¶ 5. Then, over the course of a year, Wiemers received numerous treatments for his hand but took little or no time off work during the course of these treatments. Petition at ¶ 6. During this course of treatment, Wiemers's pain increased and the treatment became move complex. Petition at ¶ 7. As a result, Wiemers told his supervisor, Amy Skramstad that he would be needing to take some medical leave time. Petition at ¶ 7. Skramstad then fired Wiemers for pursing his workers' compensation claim. Petition at ¶ 11. Thus, assuming that Wiemers's allegations are true, they would more likely than not support an award of punitive damages in this case sufficiently large to meet the required amount in controversy. *See Clarey*, 514 N.W.2d at 903; *see also Malik v. Apex Int'l Alloys, Inc.*, 762 F.2d 77 (10th Cir. 1985) (holding that where employee was discharged in retaliation for filing workers' compensation claim, $50,000 actual damage award and $75,000 punitive damage award was not so grossly excessive as to require remittitur); *Cassidy v. Spectrum Rents*, 959 F.Supp. 823, 831 (E.D.Tenn.1997) (holding that punitive damages award of $250,000 was not excessive, under Tennessee law, against employer that discharged employee for seeking workers' compensation benefits); *cf. Sanjuan v. IBP, Inc.*, 275 F.3d 1290, 1297 (10th Cir.2002) (affirming $200,000 award of punitive damages for discharged employee for seeking workers' compensation benefits but issue of whether such an award was excessive was neither raised nor discussed). Thus, the punitive damages claim, in an unspecified amount, when added to Wiemers's lost wages of $9,000 and emotional distress damages of $6,000, is sufficient to satisfy the $75,000 amount in controversy requirement.[4] The court therefore concludes that any realistic assessment of the record establishes the jurisdictional amount of $75,000, exclusive of interest and costs, to be present, and that Good Samaritan's burden of proving subject matter jurisdiction is met. Plaintiff Wiemers' Motion to Remand is, accordingly, denied.

### III. CONCLUSION

The court concludes that punitive damages claim, in an unspecified amount, when added to Wiemers's claims of lost wages and emotional distress, indicates that Wiemers was seeking more than $75,000 at the time this action was removed. Accordingly, the court has subject matter jurisdiction and plaintiff Wiemers's Motion to Remand is **denied.**

**IT IS SO ORDERED.**

---

4. Wiemers points out that, in its answer, Good Samaritan denied that Wiemers's damages exceeded $10,000. Wiemers argues that this response is evidence that the requisite jurisdictional amount is not in controversy. The court disagrees, Good Samaritan's denial that Wiemers' damages will exceed $10,000 does nothing more than put in controversy Wiemers's claim that he was damaged as a result of Good Samaritan's actions.