**Rebecca FELLER, Plaintiff,**

v.

**HARTFORD LIFE AND ACCIDENT INSURANCE CO., Defendant.**

No. 1:10–cv–00005–JAJ–RAW.

United States District Court,
S.D. Iowa,
Western Division.

May 19, 2010.

Angela L. Burmeister, Berkshire & Burmeister, Omaha, NE, for Plaintiff.

Mark A. Roberts, Jason M. Steffens, Simmons Perrine Moyer Bergman PLC, Cedar Rapids, IA, Eric Christian Tostrud, Lockridge Grindal & Nauen PLLP, Minneapolis, MN, for Defendant.

**ORDER**

JOHN A. JARVEY, District Judge.

This matter comes before the Court pursuant to Plaintiff Rebecca Feller's ("Feller") Motion to Remand filed on April 21, 2010. [Dkt. No. 9.] Defendant Hartford Life and Accident Insurance Co. ("Hartford Life") responded on May 10, 2010. [Dkt. No. 10.] On May 17, 2010, Feller replied and the Court held a hearing on the motion. [Dkt. Nos. 12 & 13.] The Court denies the motion.

**I. BACKGROUND AND ARGUMENTS**

Plaintiff Feller commenced this action against Hartford Life in the District Court for the State of Iowa, Pottawattamie County, on February 23, 2009. Feller alleged claims under Iowa law for: (1) breach of contract and (2) bad-faith denial of her claim for accidental death benefits under a policy insuring her husband. Defendant Hartford Life removed this case from Pottawattamie County on March 25, 2010. Hartford Life asserted in its notice of removal that there was complete diversity of citizenship [1] between the parties and that Feller sought a judgment in excess of $75,000, "including insurance benefits in the amount of $50,000 under a policy of insurance issued by Hartford, interest in the amount of 12% annually, costs, and attorney's fees." The pertinent sections of Feller's complaint state the following:

7. That Defendant owes Plaintiff payment [sic] the amount of $50,000.00.

. . .

10. That Defendant's denial and refusal to pay said amounts constitutes bad faith.

WHEREFORE, Plaintiff prays for a judgment against the Defendant in the amount of $50,000.00, together with interest at the rate of 12 percent (12%) per annum from May 2009 until paid in full, costs of this action, and a reasonable attorney's fees.

Feller argues that remand to state court is warranted in this case because Hartford Life cannot establish that the "amount in controversy" exceeds $75,000.[2] Hartford Life argues in response that the Court should deny Feller's motion because her claims for bad faith/punitive damages and attorney's fees each independently create an amount in controversy in excess of $75,000. As a matter of Iowa law, Hartford Life argues that punitive damages are recoverable in a bad faith claim, and should be considered when determining

1. Feller is a citizen of the State of Nebraska and Hartford Life is incorporated pursuant to Connecticut law with its principal place of business in Connecticut.

2. The Court notes that Feller did not comply with Local Rule 7(d) in that she failed to file the required brief attached to her motion for remand. A motion for remand must have an accompanying brief pursuant to Local Rule 7(d).

the amount in controversy. Likewise, Feller's requests for attorney's fees "reasonably may be expected to exceed $25,000." Instead of determining attorney's fees as of the date of removal, Hartford Life asserts that the Court should consider the amount of Feller's overall likely or anticipated attorney's fees when calculating the amount in controversy. Alternatively, Hartford Life asserts that if the Court remands this matter, the Court should require Feller to stipulate that her claim is for less than $75,000, inclusive of costs, interest, and attorney's fees.

In reply, Feller asserts that Hartford Life fails to meet its burden of proving that the amount in controversy exceeds the jurisdictional requirements by a preponderance of the evidence. She states that Hartford Life's "general statements" in its brief in opposition do not establish that the jurisdictional threshold has been met. For example, she argues that the following statements by Hartford Life are insufficient to satisfy a preponderance of the evidence standard: "it is only reasonable to conclude that Plaintiff seeks an amount that would bring her aggregate claim above the jurisdictional threshold" and "Plaintiff's claims for attorney's fees in this case reasonably may be expected to exceed $25,000." Feller contends that the "mere fact" that she could recover damages greater than $50,000 is not, by itself, complying with the amount in controversy jurisdictional threshold. Therefore, Feller asks this Court to remand this matter to state court.

## II. ANALYSIS

A defendant may remove any civil action brought in a state court to a "district court of the United States for the district and division embracing the place where such action is pending". 28 U.S.C. § 1441(a). Federal jurisdiction is proper in a civil action where there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000. *Id.* § 1332. Once in federal court, a case shall be remanded back to state court "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction...." 28 U.S.C. § 1447(c), because courts must strictly construe the removal statutes. *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108, 61 S.Ct. 868, 85 L.Ed. 1214 (1941).

The party seeking removal and opposing remand has the burden of establishing federal subject matter jurisdiction. *In re Bus. Men's Assur. Co. of Am.*, 992 F.2d 181, 182 (8th Cir.1993). For example, if there is a dispute about the amount in controversy, "the party invoking federal jurisdiction must prove the requisite amount by a preponderance of the evidence." *James Neff Kramper Family Farm P'ship v. IBP, Inc.*, 393 F.3d 828, 831 (8th Cir.2005) (citations omitted). "Generally, a complaint that alleges the jurisdictional amount in good faith will suffice to confer jurisdiction, but the complaint will be dismissed if it appear[s] to a legal certainty that the claim is really for less than the jurisdiction amount." *One-Point Solutions, L.L.C. v. Borchert*, 486 F.3d 342, 348 (8th Cir.2007) (quoting *Larkin v. Brown*, 41 F.3d 387, 388 (8th Cir. 1994)); *see also LaPree v. Prudential Fin.*, 385 F.Supp.2d 839, 842 (S.D.Iowa 2005). When considering a motion to remand, a court must resolve all doubts about federal jurisdiction in favor of remand. *Transit Cas. Co. v. Certain Underwriters at Lloyd's of London*, 119 F.3d 619, 625 (8th Cir.1997); *Cent. Iowa Power Co-op. v. Midwest Indep. Transmission Sys. Operator, Inc.*, 561 F.3d 904, 912 (8th Cir.2009).

### A. Calculating the Amount in Controversy

Courts generally look to the face of the state pleadings to determine if the

amount in controversy requirement has been satisfied. *See Horton v. Liberty Mut. Ins. Co.*, 367 U.S. 348, 353, 81 S.Ct. 1570, 6 L.Ed.2d 890 (1961). Items that may be included in the calculation of the amount in controversy include punitive damages, the value of injunctive relief, and attorney's fees. *See Bell v. Preferred Life Assurance Soc'y*, 320 U.S. 238, 240, 64 S.Ct. 5, 88 L.Ed. 15 (1943). Whether federal jurisdiction exists must be determined by looking at the case as of the time it was filed in state court. *Wis. Dep't of Corr. v. Schacht*, 524 U.S. 381, 390, 118 S.Ct. 2047, 141 L.Ed.2d 364 (1998); *McLain v. Andersen Corp.*, 567 F.3d 956, 965 (8th Cir.2009); *Core v. Sw. Bell Tel. Co.*, 847 F.2d 497, 498 (8th Cir.1988). Any "events occurring subsequent to removal which reduce the amount recoverable, whether beyond the plaintiff's control or the result of his volition, do not oust the district court's jurisdiction once it has attached." *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 293, 58 S.Ct. 586, 82 L.Ed. 845 (1938); *accord Kansas Pub. Employees Retirement Sys. v. Reimer & Koger Assocs., Inc.*, 77 F.3d 1063, 1067–68 (8th Cir.) ("The existence of this [removal] jurisdiction is determined at the time of removal, even though subsequent events may remove from the case the facts on which jurisdiction was predicated."), *cert. denied*, 519 U.S. 948, 117 S.Ct. 359, 136 L.Ed.2d 250 (1996).

If, on the face of the pleadings, the complaint is not removable, a court may then "provid[e] the parties with the opportunity to satisfy the court as to the amount in controversy." *Wiemers v. Good Samaritan Soc'y*, 212 F.Supp.2d 1042, 1045 (N.D.Iowa 2002) (citing *Jil McCorkindale v. Am. Home Ass'n Co./A.I.C.*, 909 F.Supp. 646, 655 (N.D.Iowa 1995)). In deciding the amount in controversy, a court must bear in mind that

> it is the amount or value of that which the complainant seeks to recover, or the sum or value of that which the defendant will lose if the complainant succeeds in his suit, that constitutes the jurisdictional sum or value of the matter in dispute, which tests the jurisdiction.

*Hatridge v. Aetna Casualty & Surety Co.*, 415 F.2d 809, 815 (8th Cir.1969) (quoting *Cowell v. City Water Supply Co.*, 121 F. 53, 57 (8th Cir.1903)). In terms of the burden of proof the proponent of diversity jurisdiction must prove, Eighth Circuit law[3] holds that a

> district court has subject matter jurisdiction in a diversity case when a fact finder could legally conclude, from the pleadings and proof adduced to the court before trial, that the damages that the plaintiff suffered are greater than $75,000. We emphasize that [the law] does not suggest that unliquidated damages in some *specific amount* must be proved before trial by a preponderance of evidence.

---

**3.** The court in *Kopp* simplified the test for amount in controversy in order to prevent a proponent of diversity jurisdiction from having to "prove a negative by a preponderance of the evidence." *Kopp*, 280 F.3d at 885. The Eighth Circuit held in *Larkin v. Brown*, that "a complaint that alleges the jurisdictional amount in good faith will suffice to confer jurisdiction, ... [unless] it appears to a legal certainty that the claim is really for less than the jurisdictional amount." *Id.* at 884 (quoting *Larkin v. Brown*, 41 F.3d 387, 388 (8th Cir.1994)) (internal quotations and alterations

omitted). Contrast this to the other standard, whereby the "defendant challeng[ing] the plaintiff's allegations of the amount in controversy, [forces] the plaintiff [to] establish jurisdiction by a preponderance of the evidence." *Id.* at 884–85 (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 188–89, 56 S.Ct. 780, 80 L.Ed. 1135 (1936)). The standard in this case is that a fact finder must be able to conclude by a preponderance of evidence that the damages Feller suffered are in excess of $75,000.

*Kopp v. Kopp*, 280 F.3d 883, 885 (8th Cir.2002) (emphasis added). Where plaintiff's state court complaint alleges damages less than $75,000, and defendant removes to federal court, the defendant must prove by a preponderance of evidence that plaintiff will recover at least $75,000 if successful. *Wang v. Pacific Cycle, Inc.*, 530 F.Supp.2d 1048, 1052 (S.D.Iowa 2008); *LaPree*, 385 F.Supp.2d at 842 (citing *Trimble v. Asarco, Inc.*, 232 F.3d 946, 959 (8th Cir.2000)), *abrogated on other grounds by, Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 125 S.Ct. 2611, 162 L.Ed.2d 502 (2005) ("[T]he party invoking federal jurisdiction must prove the requisite amount by a preponderance of the evidence."); *Kopp*, 280 F.3d at 885.

Here, Feller asserts damages of $50,000, well below the jurisdictional threshold of $75,000. The Court finds that her complaint is facially insufficient as to the amount in controversy. However, the Court reviews Feller's complaint to determine if, by a preponderance of evidence, the possible punitive damages claim or future attorney's fees could exceed the amount in controversy requirement and confer federal diversity jurisdiction. *See Wiemers*, 212 F.Supp.2d at 1045.

### 1. Bad Faith or Punitive Damages Claims

■ The Court must first determine whether Iowa law permits punitive damages for a bad faith denial of a claim for accidental death benefits for an insurance policy. Once it is established that punitive damages are possible for the type of relief sought, a court must then determine whether punitive damages may properly be included in calculating the amount of controversy. *See Anthony v. Security Pacific Fin. Servs., Inc.*, 75 F.3d 311, 315 (7th Cir.1996). If punitive damages are "recoverable as a matter of state law", *id.*, then subject matter jurisdiction is met "unless it is clear 'beyond a legal certainty that the plaintiff would under no circumstances be entitled to recover the jurisdictional amount.'" *Id.* (quoting *Cadek v. Great Lakes Dragaway, Inc.*, 58 F.3d 1209, 1212 (7th Cir.1995)). A defendant must only successfully assert by a preponderance of evidence that the damages the plaintiff suffered exceed $75,000. *Kopp*, 280 F.3d at 885.

■ This Court answers the first part of the *Anthony* inquiry in the affirmative. As a matter of Iowa law, a plaintiff may maintain a cause of action for a claim of bad faith against an insurer. *See Stahl v. Preston Mut. Ins. Ass'n*, 517 N.W.2d 201, 203 (Iowa 1994); *see also Dolan v. Aid Ins. Co.*, 431 N.W.2d 790 (Iowa 1988). To prove bad faith, "[t]he insured 'must show the absence of a reasonable basis for denying benefits of the policy . . .' and that the defendant knows or has 'reason to know that its denial is without basis.'" *Id.* (quoting *Reuter v. St. Farm Mut. Auto. Ins. Co.*, 469 N.W.2d 250, 253 (Iowa 1991)). Punitive damages may be brought on bad faith claims against insurers. *Terra Indus., Inc. v. Commonwealth Ins. Co. of Am.*, 990 F.Supp. 679, 688 (N.D.Iowa 1997). A wide variety of other "illegal acts"[4] under Iowa law "may support an award of punitive damages." *Id.*

---

4. Under Iowa law, the court in *Terra* notes the following illegal acts that support punitive damage awards:

Terra is correct that proof of illegal acts may support an award of punitive damages. *See, e.g., Clark–Peterson Co., Inc. v. Ind. Ins. Assocs., Ltd.*, 514 N.W.2d 912, 916 (Iowa 1994) (on claims of breach of contract or fraudulent misrepresentation, punitive damages are not allowed in the absence of malice, fraud, or other illegal acts, or a showing that wrongful conduct was committed or continued with willful or reckless disregard for another's rights); *West v. Jayne*, 484 N.W.2d 186, 192 (Iowa 1992) (punitive damages are not ordinarily recov-

Although the Court finds that Iowa law permits Feller to recover punitive damages pursuant to her cause of action, the Court must also independently determine whether she is likely to recover an amount sufficient to satisfy the total jurisdictional threshold of $75,000. *Anthony*, 75 F.3d at 315. According to the Eighth Circuit, punitive damages are included in the amount in controversy. *OnePoint Solutions, L.L.C.*, 486 F.3d at 342 (internal quotation omitted). But the existence of the required amount needed to satisfy the amount in controversy must be supported by competent proof. *Id.* A court should give "a claim for punitive damages . . . closer scrutiny". *Id. See also State of Mo. ex rel. Pemiscot County v. W. Sur. Co.*, 51 F.3d 170, 173 (8th Cir.1995); *Anthony*, 75 F.3d at 315 ("When a claim for punitive damages makes up the bulk of the amount in controversy, and may even have been colorably asserted solely to confer jurisdiction, we should scrutinize that claim closely.") (citing *Packard v. Provident Nat'l Bk.*, 994 F.2d 1039, 1046 (3d Cir.), *cert. denied sub nom, Upp v. Mellon Bk.*, 510 U.S. 964, 114 S.Ct. 440, 126 L.Ed.2d 373 (1993)). Despite this closer scrutiny, a court has "greater discretion" in ascertaining the dollar amount in a claim for punitive damages, than that of actual damages. *Id.*

■ A court may read claims for punitive damages into a pleading if it is clear that such damages are possible based upon the cause of action asserted. The Fifth Circuit has held that the "mere availability" of punitive damages could satisfy the $75,000 amount in controversy requirement. *Dow Agroscis., L.L.C. v. Bates*, 332 F.3d 323, 326 n. 5 (5th Cir.2003). Federal district courts in Iowa have consistently used this methodology in calculating amounts in controversy. *See Anderson v. Maytag Corp.*, 2007 WL 4110613, at *4 (S.D.Iowa Nov. 16, 2007) ("Further, as Anderson has asserted a claim for punitive damages, the amount in controversy meets the requisite amount."); *LeClere v. Big Lots Stores, Inc.*, 2006 WL 3422678, at *1 (N.D.Iowa Nov. 27, 2006) ("The amount in controversy, when punitive damages are included, exceeds $75,000, exclusive of interest and costs.") (internal citations omitted); *but see Varboncoeur v. State Farm Fire and Cas. Co.*, 356 F.Supp.2d 935, 944 (S.D.Iowa 2005) (along with other aggregated costs, "punitive damages, if awarded, were unlikely to exceed $25,000 for either plaintiff.").

erable for breach of contract, but may be awarded if a defendant is guilty of malice, fraud, or other illegal acts); *Woods v. Schmitt*, 439 N.W.2d 855, 870 (Iowa 1989) (in a breach of covenant action, an award of punitive damages was appropriate only where the defendant was guilty of malice, fraud, gross negligence, or an illegal act); *Higgins v. Blue Cross of Western Iowa*, 319 N.W.2d 232, 235 (Iowa 1982) ("Punitive damages may not be recovered for a mere breach of contract; it is only when the breach also constitutes an independent tort, or other illegal or wrongful act, that punitive damages becomes a possibility."); *Pogge v. Fullerton Lumber Co.*, 277 N.W.2d 916, 918–19 (Iowa 1979) (exemplary damages are not a remedy for breach of contract, except where the breach also consti-

tutes an intentional tort, or other illegal or wrongful act, if committed maliciously) . . . *Pirkl v. Northwestern Mut. Ins. Ass'n*, 348 N.W.2d 633, 636 (Iowa 1984) (denial of a valid claim by a casualty insurer will not support a claim for punitive damages in addition to the recovery of the loss that should have been covered by the policy, unless denial is coupled with more than upsetting the justified expectations of the insured; sufficient support must come from proof of positive misconduct of a malicious, illegal, or immoral nature); *Higgins*, 319 N.W.2d at 235 (recognizing breach of duty to act in good faith in defending the insured against claims of an injured third-party as one tort in connection with a breach of contract that may justify punitive damages). *Terra Indus., Inc.*, 990 F.Supp. at 688.

In addition, it is the Court's independent duty to inquire into the amount in controversy as under Iowa Rule of Civil Procedure 1.403(1), only a pleading for liquidated damages shall state a specific amount. IOWA RULE CIV. PRO. 1.403(1). For unliquidated damages, such as punitive damages, "[t]he specific amount and elements of monetary damages sought may be obtained through discovery." *Id.* Iowa rules of pleading require courts to look at the stated liquidated damages and the possibility of punitive damages, and then determine whether the aggregate amount meets the amount in controversy. For example, in *Sutter v. Aventis CropSci. USA Holding, Inc.*, the court found that the availability of punitive damages satisfied the amount in controversy when added to the amount on the face of the complaint. *Sutter v. Aventis CropScience USA Holding, Inc.*, 145 F.Supp.2d 1050, 1053 (S.D.Iowa). In *Sutter*, the pleaded assertion itself did not consider punitive damages and the plaintiff moved to remand the case back to state court based upon the defendant's failure to meet the required amount in controversy. *Id.* The court disagreed and held that "the amount in controversy ... exceeds $75,000, when either punitive damages or the value of injunctive relief is included, as they must be." *Id.* at 1053–54.

██ Here, the Court finds that a reasonable fact finder could conclude that punitive damages, in addition to the stated relief sought, would exceed $75,000. *Kopp*, 280 F.3d at 885. Feller has not abandoned her claim of bad faith failure to pay. This cause of action subjects Hartford Life to the possibility of punitive damages. *Sutter*, 145 F.Supp.2d at 1053. Assuming judgment of $50,000 on the insurance contract itself, a fact finder would only need to award punitive damages for an amount slightly greater than half of the contractual amount sought. Hartford Life

could also be subject to other tort remedies, including emotion pain and suffering, aggravated damages, or other such remedies available in equity. Accordingly, the Court finds that remand is not proper because the possibility of damages—when added to the $50,000—is in excess of the $75,000 jurisdictional threshold.

### 2. Present and Future Attorney's Fees

Attorney's fees may also be included in calculating the amount in controversy. "[I]t is well settled that the amount claimed for attorney fees must be added to the principal sum sued for in determining the amount in controversy...." *Batts Restaurant, Inc. v. Commercial Ins. Co. of Newark*, 406 F.2d 118, 120 (7th Cir.1969) (citing *Missouri State Life Ins. Co. v. Jones*, 290 U.S. 199, 54 S.Ct. 133, 78 L.Ed. 267 (1933)); *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1155 (9th Cir.1998); *Foret v. Southern Farm Bureau Life Ins. Co.*, 918 F.2d 534, 537 (5th Cir.1990) ("[A]ttorney's fees may be included in determining the jurisdictional amount."); *Capitol Indem. Corp. v. Miles*, 978 F.2d 437, 438 (8th Cir.1992).

However, there is a split in authority as to whether *future* attorney's fees may be included in addition to the attorney's fees as of the date of removal. The only circuit to definitively decide against using future attorney's fees to determine the amount in controversy is the Seventh Circuit Court of Appeals. The Seventh Circuit held in *Gardynski–Leschuck* that future attorney's fees will not support federal jurisdiction. *Gardynski–Leschuck v. Ford Motor Co.*, 142 F.3d 955, 958 (7th Cir.1998). The Seventh Circuit stated that anticipating legal fees would be like "reducing [such] uncertainties to present value much the way the expected value of lost future income is determined in a tort case." *Id.* Just as in a tort case, the expected value of

any future income or expense can be calculated by projecting both the probability of an event occurring and the cost of that event. *Id.* While only as exact as the inputs used, the calculation then results in an anticipated legal cost as of the start of litigation. *Id.* Using this method, it is possible to approximate legal expenses in a similar fashion as other recoverable litigation expenses. *Id.* However the Seventh Circuit cautioned that,

> this calculation includes the value of legal services that have not been and may never be incurred, and are therefore not "in controversy" between the parties. Unlike future income lost to injury, legal fees are avoidable. It is essential to distinguish between the likely course of litigation and the legal rights of the parties.

*Id.* Even though legal expenses are subject to the same discounting methods as other yet-to-be-determined damages, the court distinguished the certainty of incurring legal fees from other expenses or income that can also be reduced to a net present value. The distinguishing characteristic of legal fees centered on choice: the litigant can choose to proceed or can settle or withdraw from suit. With this characterization, the Seventh Circuit held, by necessity, that future legal fees are too indeterminate to be reduced to present value. *Id.* As a result, the Seventh Circuit rejected adding future legal expenses to the amount in controversy when the suit is filed. *Id.* at 959.

In contrast, two circuit courts have accepted the assertion that future attorney's fees should be included in calculating the jurisdictional threshold. The Fifth Circuit considered the issue of including future attorney's fees for a class action suit in *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir.2002). Under Louisiana law, the court held that the plaintiffs' attorney's fees in a class action lawsuit were likely to exceed the jurisdic-

tional threshold. *Id.* at 724–25. The court would include attorney's fees under a statute allowing the class members attorney's fees. *Id.* at 724. The court held that the plaintiff "failed to demonstrate to a legal certainty that the amount in controversy did not exceed the jurisdictional amount." *Id.*

This Court finds that aggregating reasonably expected attorney's fees in a class action suit is inapposite to the facts of this single plaintiff case. The Court turns, instead, to the Tenth Circuit's decision in *Miera v. Dairyland Ins. Co.*, 143 F.3d 1337, 1340 (10th Cir.1998). In *Miera*, the plaintiff's facial claim was for less than the required amount in controversy, then set at $50,000. *Id.* Her attorney's fees as of the date of removal, along with her claim for treble damages, were still $2,117.50 shy of the jurisdictional threshold. *Id.* The court held that the plaintiff could include future attorney's fees in arriving at the jurisdictional threshold amount. *Id.* "Considering the realities of modern law practice and the complexities of this case, we cannot say that, viewed as of the date of removal, it would be unreasonable to expect plaintiff to incur an additional $2,117.50 in attorney's fees." *Id.*

To supplement the landscape of this issue further, the Court turns to a survey of the positions district courts have taken to assess whether there is a predominant stance on this issue. There appears to be more agreement among courts that it is proper to include future or anticipated attorney's fees in calculating the amount in controversy. *See infra.* Some courts take the stance that the future legal activities make it "more likely than not" that attorney's fees would increase the total damages above $75,000 or that reasonable attorney's fees are a factor for consideration. *Viera v. Sprint United Mgmt. Co.*, 2003 WL 251930, at *3–4 (N.D.Tex. Jan. 31,

2003) (including in the amount in controversy the cost of likely future litigation activities, including discovery, depositions, and possible other motions); *Gilman v. Arthur J. Gallagher & Co.*, 2009 WL 5195956, at *11 (S.D.Tex. Dec. 21, 2009) (court found that despite adding "probably [sic] attorney's fees to the amount of damages facially apparent in the petition, the case does not meet the jurisdictional minimum."); *Pendergrass v. Time Ins. Co.*, 2010 WL 989154, at *2 (W.D.Ky. Mar. 12, 2010) (plaintiff argued that future fees cannot be considered, but court held that the defendant "has proven by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional threshold."). In a case rejecting future attorney's fees, the facts "as to the amount of hours" failed to meet the preponderance of evidence standard. *Kingdom Ins. Group v. United Healthcare Ins. Co.*, 2010 WL 1782275, at *6 (M.D. Georgia May 4, 2010). To include the hours, the "Court would [have to] engage in pure speculation", which it declined to do. *Id.*

In *Raymond v. Lane Constr. Corp.*, the case Hartford Life relies on, the court found the reasoning of *Miera* to be more persuasive than that of *Gardynski–Leschuck*. *Raymond v. Lane Constr. Corp.*, 527 F.Supp.2d 156, 163 (D.Maine 2007). The court analyzed the Seventh Circuit's decision in *Gardynski–Leschuck* and stated that it would have agreed with denying future attorney's fees based on the particular facts the plaintiff alleged. *Id.* (citations omitted). The plaintiff's posture in *Gardynski–Leschuck* was that damages were $22,011.99 and she anticipated future legal fees of $28,020.00, exceeding the jurisdictional threshold by $31.99. *Id.* (citations omitted). The court in *Raymond* found this to be a "transparent attempt" to satisfy jurisdiction. *Id.* However, the court disagreed with the Seventh Circuit extending its holding that "a court may not consider any estimate, however reasonable, of future attorney's fees". *Id.* In deciding that future attorney's fees should be a factor in the calculus of the jurisdictional threshold, the *Raymond* court explained,

> [t]o meet the jurisdictional threshold, courts routinely consider future damages, such as pain and suffering, medical bills, and lost wages. A rule that treats attorney's fees differently from any other category of damage for purposes of ascertaining the amount of the "matter in controversy" draws no support from the language of the statute. A transparent attempt to puff up future attorney's fees to cross the jurisdictional threshold should bear special scrutiny.... Nevertheless, the Court declines to eliminate any consideration of a patently reasonable estimate of future attorney's fees simply because they are attorney's fees and not another component of monetary relief, such as future special damages or pain and suffering.

*Id.*

The Court next looks to district courts within the Ninth Circuit to show that other circuits lack cohesive unity in determining whether attorney's fees are included in the amount in controversy. *Compare Faulkner v. Astro–Med, Inc.*, 1999 WL 820198, at *4 (N.D.Cal. Oct. 4, 1999) ("When estimating attorney's fees for the purposes of establishing jurisdiction, the only fees that can be considered are those incurred as of the date of removal."); *Conrad Assocs. v. Hartford Accident & Indemnity Co.*, 994 F.Supp. 1196, 1200 (N.D.Cal.1998) (declining to consider attorney's fees spent after the date of removal); *Dukes v. Twin City Fire Ins. Co.*, 2010 WL 94109, at *2 (D. Arizona Jan. 6, 2010) ("the better view is that attorneys' fees incurred after the date of removal are not properly included"); *with Brady v. Mercedes–Benz USA, Inc.*, 243 F.Supp.2d 1004, 1010–11 (N.D.Cal. 2002) (including "a reasonable estimate of

attorneys fees likely to be expended" in calculating the amount in controversy); *Simmons v. PCR Tech.*, 209 F.Supp.2d 1029, 1034–35 (N.D.Cal.2002) (same); *Roe v. Teletech Customer Care Management (Colorado), L.L.C.*, 2007 WL 1655172, at *4 (W.D.Wash. June 6, 2007) ("a reasonable, informed estimation of fees, based on the various tasks to be accomplished by both sides, and the hourly rates of the attorneys who will conduct those tasks (including future attorneys' fees), properly comprise the evidence that can and should be considered in evaluating the amount in controversy").

Within the Eighth Circuit, there are only two district court opinions that address the inclusion of future attorney's fees and they come to opposite conclusions. In a footnote and citing to a case in the Northern District of California, the court in *Peterman v. Tinsley* considered future attorney's fees to be appropriate for calculating the jurisdictional threshold. *Peterman v. Tinsley*, 2007 WL 1589549, at *2 n. 19 (E.D.Ark. June 1, 2007) (citing *Brady*, 243 F.Supp.2d at 1008–11, where the court held that a reasonable estimate of attorney's could be included in the amount in controversy). Yet a far greater analysis opposing future attorney's fees is present in *GreatAmerica Leasing Corp. v. Rohr–Tippe Motors, Inc.*, 387 F.Supp.2d 992 (N.D.Iowa 2005). The court weighed the decisions of *Miera* and *Gardynski–Leschuck*, and found that the reasoning of not including attorney's fees tipped the scales. *Id.* at 996. The court quoted extensively from *Gardynski–Leschuck* in its analysis. *Id.* at 996–97. It then found that "[i]n determining the amount in controversy, the court cannot speculate about attorney fees and interest that might accrue if the matter were to proceed to trial and the parties were to engage in acrimonious litigation." *Id.* at 997. Additionally, the particular facts of the case supported the court's conclusion, as only $48,000 was al-

legedly due on the contract and "minimal" legal work had been performed by the time of the suit's filing. *Id.* The court suggested that it might have decided in favor of including future legal expenses had it been provided with "any actuarial formula or other method by which the court might calculate attorney fees." *Id.* If forced to speculate, which it made plain it was hesitant to do, the court found that as the case was a "relatively straightforward contract dispute", it would be unlikely future legal expenses could enable the amount in controversy to exceed $75,000. *Id.*

■ After reviewing the various conclusions of other courts, this Court finds that it is rational to include the future legal expenses in calculating the amount in controversy. All liquidated damages are speculative, and, in fact, are imbued with a measure of risk. A plaintiff cannot read a crystal ball—or the minds of the fact finders—to conclude that she will be successful up to or beyond a certain dollar amount. While a plaintiff could assert a "ballpark figure" for projected non-liquidated damages, thus catapulting her over the $75,000 threshold, she is still uncertain as to the outcome. Besides the dollar value of the award, there is likely uncertainty as to the method of discounting cash flows to present value, calculating a reasonable income stream, or even determining a reasonable discount rate. The same lack of uncertainty most definitely applies to attorney's fees. Litigation could be acrimonious, a plaintiff might amend her pleadings to include additional causes of action, or discovery requests could result in voluminous records. There is also no statutory support to distinguish reasonably ascertainable future attorney's fees from attorney's fees that have accrued up to the date of filing. Thus, the Court cannot impose an artificial distinction between future non-

attorney's fees damages and future attorney's fees. It would defeat common sense to envision such a separation between the two categories of expenses.

 Accordingly, this Court agrees with the findings of the Tenth Circuit in *Miera*, that the practicalities of law practice make it entirely likely that legal expenses could be incurred that exceed $25,000. *Miera*, 143 F.3d at 1340. This case was filed in state court over one year ago and there appears to be a significant volume of legal work ahead, including discovery, depositions, motions, etc. *Kopp* reiterates that Eighth Circuit law does not require a court to find unliquidated damages in "some specific amount ... before trial by a preponderance of evidence." *Kopp*, 280 F.3d at 885. Applying this same guidance to future attorney's fees, the Court finds that Hartford Life must prove that future attorney's fees are in excess of $25,000 by a preponderance of evidence. Hartford Life offers support[5] that legal fees could exceed $25,000 by referring to courts that awarded fees to plaintiffs in actions to collect on accidental-death policies. The Court finds by a preponderance of evidence that the plaintiff's future legal fees could well exceed $25,000. In addition, Feller has not shown by a legal certainty that her recovery would be less than $75,000, including future legal fees. *Larkin*, 41 F.3d at 388; *Kopp*, 280 F.3d at 885.

### III. Conclusion

In conclusion, the Court finds by a preponderance of evidence that it is likely that punitive damages and future legal fees, independently, could each satisfy the jurisdictional threshold of $75,000.

---

**5.** Hartford Life cites to the following cases: *Fuller v. Hartford Life Ins. Co.*, 281 F.3d 704, 708–09 (8th Cir.2002) ($125,000 fee award); *Evans v. Provident Life & Accident Ins. Co.*, 15 Kan.App.2d 97, 803 P.2d 1033, 1042 (Kan.Ct.

Upon the foregoing,

**IT IS ORDERED** that the Court denies Plaintiff Feller's Motion to Remand. [Dkt. No. 9.]

App.1990) ($71,645.65 fee award), *reversed in part on other grounds*, 249 Kan. 248, 815 P.2d 550 (1991); *Brown v. Zurich*, 150 Ohio App.3d 105, 779 N.E.2d 822, 824 (Ohio Ct. App.2002) ($118,000 fee award).